Samuel SHAMES and Richard Rothstein,
d/b/a Newbury Dental Associates,
Plaintiffs,

v.

Eric COONTZ and Paul Dooley,
d/b/a Newbury Street Dental
Center, Defendants.

No. 95 Civ. 10620 (MEL).

United States District Court,
D. Massachusetts.

April 24, 1995.

Burton A. Nadler, Petrucelly & Nadler, Boston, MA, for Samuel Shames, Richard Rothstein.

David G. Hanrahan, Marla B. Hurwitz, Gilman, McLaughlin & Hanrahan, Boston, MA, for Eric Coontz, Paul Dooley.

David G. Hanrahan, Marla B. Hurwitz, Gilman, McLaughlin & Hanrahan, Burton A. Nadler, Petrucelly & Nadler, Boston, MA, for Newbury Street Dental Center, Inc.

LASKER, District Judge.

Samuel Shames and Richard Rothstein are doctors of dentistry who, since 1979, have been the principals of a dental practice at 274 Newbury Street in Boston. Through extensive advertising and promotion and apparently satisfactory and faithful service to their patients, they have developed a substantial practice in the Back Bay section of Boston where the office is located, and in the Boston area generally.

On March 13, 1995, Eric Coontz, a doctor of dentistry, and Paul Dooley, his business partner, opened an office for dental practice across and down the street from Newbury Dental Associates. This suit stems from the defendants' use of the name "Newbury Street Dental Center." Plaintiffs have moved for a preliminary injunction restraining the defendants from the use of a name which contains both the words "Newbury" and "Dental" or which is susceptible of confusion with the plaintiffs' name, "Newbury Dental Associates."

An evidentiary hearing was held on April 11 and 13, 1995, at which time both parties produced witnesses and exhibits. Having considered the testimony of the witnesses and the evidence put before the Court, the motion for a preliminary injunction is granted.

■ The factors controlling whether a preliminary injunction should be allowed are: (1) the moving party's likelihood of success in proving its case, (2) whether the moving party will be irreparably injured by denial of relief, (3) the balance of equities between the parties, and (4) the public interest, if any, in the outcome. *Sunshine Development, Inc. v. F.D.I.C.*, 33 F.3d 106, 110–111 (1st Cir.1994).

## I. Probability of Success

The plaintiffs have established the probability of success on the merits in this case. There is no dispute that both parties are using short names which include both the words "Newbury" and "Dental," that their offices are located physically across and down the street from each other and that their addresses share two of the three numbers in each address.

■ Since the featured word in each party's name is "Newbury," which is a geographic expression, and the subordinate term is "Dental," which is a generic expression, the question is whether the plaintiff will probably succeed in proving that its name has achieved secondary significance. I conclude that it has.

In *Boston Beer Co. v. Slesar Bros. Brewing Co.*, 9 F.3d 175 (1st Cir.1993), the Court of Appeals of this Circuit stated that:

"Among the factors this court generally looks to in determining whether a term has acquired secondary meaning are: (1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture. Proof relating to these factors constitutes circumstantial evidence from which a court must draw reasonable inferences." *Id.* at 182 (citations omitted).

Applying these factors, I find that the plaintiffs will most likely prevail. First, they have used their name steadily for 16 years with apparent considerable success. Second, they have advertised and promoted their name on a broad, consistent and pervasive basis in a wide variety of media: *The City Shopper, The TAB*, the *NYNEX Yellow Pages, The City* (a book of coupons for local goods and services), ADVO mailings, the "PERKS Unlimited" corporate rate savings card program, the New England Talent Guide jointly produced by the American Federation of Television and Radio Artists and

the Screen Actors Guild, and several relocation and visitors guides, including those produced by the Hynes Convention Center, The Westin Hotel at Copley Place and the Back Bay Association. Dr. Shames testified that the plaintiff's total advertising expenditures, for the last ten years, less amounts paid for the plaintiff's advertisement in the Yellow Pages, were roughly as follows:

| | |
|---|---|
| 1984: | $15,000 |
| 1985: | 12,000 |
| 1986: | 12,000 |
| 1987: | 15,000 |
| 1988: | 10,000 |
| 1989: | 12,000 |
| 1990: | 17,000 |
| 1991: | 32,000 |
| 1992: | 39,000 |
| 1993: | 40,000 |
| 1994: | 50,000 |

and that 1995 advertising expenditures—again, less the Yellow Pages expense—are projected to be $50,000. *See President and Trustees of Colby College v. Colby College— New Hampshire,* 508 F.2d 804, 808 (1st Cir. 1975) ("while secondary meaning is shown by the success rather than by the mere fact of an enterprise's promotional efforts ... the normal consequence of substantial publicity may be inferred"). Finally, the plaintiffs have made substantial efforts to promote a conscious connection in the public's mind between its name and its services. They have not advertised Newbury Street but "Newbury Dental Associates." As a result, their practice has achieved a substantial and loyal following.

 Although these findings alone might justify the conclusion that, under the Lanham Act, the defendants' name was likely to confuse the consumer, there is substantial further evidence which supports the plaintiffs' claim. In this Circuit, likelihood of confusion is determined by considering a plethora of factors. *Boston Athletic Association v. Sullivan,* 867 F.2d 22, 29 (1st Cir. 1989). They are:

(1) Similarity of the marks: Here all agree that the marks are substantially similar.

(2) Similarity of the goods: Here the goods are identical.

(3) Relationship between the parties and channels of trade: Here again, the practices are identical; that is, patients of both parties make appointments and go to the dentist (albeit reluctantly).

(4) The relationship between the parties' advertising: In this case, the parties frequently advertise side by side; for example, in the Yellow Pages and the *City Shopper.*

(5) The classes of prospective purchasers: Here the parties' "purchasers" are from the identical class of dental patients.

(6) Evidence of actual confusion: The evidence of actual confusion in this case is considerable. Within a period of four weeks, 25 to 30 instances of actual confusion have occurred between the offices of the plaintiff and the defendant, consuming a significant amount of time and energy to correct the misimpression of patients who have gone to the wrong offices.

(7) The defendants' intent in adopting the mark: There is insufficient evidence in the record to make a finding whether the defendants have adopted their name in good or bad faith. However, it is not unreasonable to assume that a professional who adopts a name nearly identical to that of a colleague whose office is across the street might hope that he would accrue some advantage thereby. Moreover, the defendants' failure to consult a qualified attorney before adopting what they knew was a nearly identical name, and the formation of the defendant corporation by Dr. Coontz and Mr. Dooley in violation of the state law requirement that their activities be legally separate, is troubling.

(8) The strength of the mark: The plaintiff's mark is not strong.

Although the plaintiff's mark is not strong, in light of the considerable evidence of secondary significance and the presence of the other seven indicators of the likelihood of confusion, I conclude that there is a substantial likelihood of future confusion threatening the interests of patients who are entitled to know what dentist they are dealing with.

## II. Irreparable Harm

 The plaintiffs have established that they will be irreparably harmed if the situation continues as it is. The question is not one of money alone; if it were, equitable relief would not be necessary. The plaintiffs should not be forced to face the possible loss of patients who may be frustrated or misled by the confusion involved, or to subject their professional reputation to the risk that the defendants' office may not perform satisfactorily.

## III. Balancing the Equities

The equities tip in favor of the plaintiffs. They risk the possible harm indicated above, whereas, if injunctive relief is granted, the major deprivation suffered by the defendants will be the cost of preparing new identifying material, a sum estimated by Dr. Coontz at about $2,100.

## IV. The Public Interest

The public in this case consists of patients or potential patients, who have the right to be certain that they are actually being treated by the dentist whom they intended to retain. The continuation of the presently confusing situation would burden those rights unnecessarily.

For the reasons indicated, the motion for a preliminary injunction is granted.