MADISON REPROGRAHICS, INC., d/b/a Madison Repro, a
Wisconsin corporation, Plaintiff-Appellant,

v.

COOK'S REPROGRAPHICS, INC., formerly Repro Plus, Inc.,
a Wisconsin corporation, Michael S. Cook and Darlene
A. Cook, Defendants-Respondents.

Court of Appeals

*No. 95–2596. Oral argument May 9, 1996.—Decided June 27,
1996.*

(Also reported in 552 N.W.2d 440.)

For the plaintiff-appellant the cause was submitted on the briefs of *J. Thomas Haley* and *Kevin J. Palmersheim* of *Haley Palmersheim, S.C.* of Middleton. There was oral argument by *Kevin J. Palmersheim*.

For the defendants-respondents the cause was submitted on the brief of *Richard A. Westley* and *David J. Regele* of *Westley Law Offices, S.C.* of Madison. There was oral argument by *David J. Regele*.

Before Gartzke, P.J., Sundby and Vergeront, JJ.

VERGERONT, J. Madison Reprographics, Inc. appeals from a judgment dismissing its claims against Cook's Reprographics, Inc. (formerly known as Repro Plus, Inc.) for common law trade name infringement and infringement of a mark registered under § 132.01, STATS. After a trial to the court, the court dismissed the common law claim because it determined that there was insufficient likelihood of confusion between "Madison Repro" and "Repro Plus." We affirm the dismissal of this claim. The trial court also dismissed the statutory claim. We affirm the dismissal of the statutory claim, concluding that Cook's Reprographics' logo does not meet the statutory definition of a "counterfeit mark" under § 132.001(1), STATS.

## FACTUAL BACKGROUND

Madison Reprographics was incorporated in January 1977 under the name QDS, Inc. In 1982, it changed its name to Madison Reprographics, Inc. Madison Reprographics' primary business is providing the services of photographic reproduction, document reduction and enlargement, blue-line printing, large document copying, and general document reproduction. It provides these services to architects, engineers, graphic artists, designers, law firms, accounting firms, insurance companies and publishers. It also sells some drafting supplies and printing materials. Its business locations have been on the west side of Madison, Wisconsin, and in Middleton, Wisconsin, and most of its business is within Dane County.

Madison Reprographics started to use the name "Madison Repro" in connection with advertising and the promotion of its business in 1982 or 1983. In October 1983, Madison Reprographics registered the mark "Madison Repro" in a design format with the Wisconsin Secretary of State. The registered mark consists of a solid red rectangle surrounding the word "repro" in lower-case, bold, sans serif white letters; above the red rectangle is the word "MADISON" in upper-case, plain, sans serif red letters. The application described the business as "Reprographic Service and Sale of Printing Products: Example—Blue-Line Printing Paper."

Cook's Reprographics incorporated under the name of "Repro Plus, Inc." in July 1992, and began doing business on the west side of Madison. Seventy percent of its business consists of offering the services of plain paper copying, diazo printing, specification copying, color copying, dry mounting and laminating. The remainder of its business consists of selling drafting and plotting equipment and graphic arts

232

equipment. Cook's Reprographics' main client base consists of architects, engineers and contractors; other clients are advertising agencies, law firms, graphic artists and interior designers. Most of its business is within Dane County. Soon after it began operating, Cook's Reprographics began advertising and promoting its business using the name "Repro Plus" and a logo containing the words "Repro Plus Inc." The logo consists of the black outline of a scroll on a white background. On the scroll, "Repro" is written in red, serif, italicized letters above "Plus Inc." in white, serif, italicized letters outlined in black.[1]

## COMMON LAW TRADE NAME INFRINGEMENT

Madison Reprographics argues that the trial court erred in determining that there was insufficient likelihood of confusion between the names "Madison Repro" and "Repro Plus" because there are facts showing actual confusion. Cook's Reprographics responds that the trial court's determination was correct, and alternatively argues that "Madison Repro" is a generic term and therefore entitled to no protection at common law regardless of any likelihood of confusion. We conclude that the evidence supports both the trial court's implicit finding that "Madison Repro" is descriptive and its finding that there was insufficient likelihood of confusion.

*Background on Common Law Infringement*

Wisconsin recognizes a cause of action at common law for infringement of a trademark or trade name.

---

[1] Madison Repro's mark and Cook's Reprographics' logo are reproduced in an attached exhibit.

*First Wisconsin Nat'l Bank v. Wichman,* 85 Wis. 2d 54, 63, 270 N.W.2d 168, 172-73 (1978).[2] In order to prevail on this claim, the plaintiff must show that a designation meets the definition of trademark or trade name and that the defendant's use of a similar designation is likely to cause confusion. *Id.* at 64-66, 270 N.W.2d at 173-74; RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 20 (1995) [hereinafter RESTATEMENT].

Madison Reprographics asserts that "Madison Repro" is entitled to protection as a trade name. A trade name is a word or other designation, or a combination of such designations, that is used in a manner that identifies that business or enterprise and distinguishes it from the business or enterprise of others. RESTATEMENT § 12.[3] Just as with trademarks, a desig-

---

[2] The supreme court in *First Wisconsin Nat'l Bank v. Wichman,* 85 Wis. 2d 54, 270 N.W.2d 168 (1978), adopted the definitions, rules and rationale of this cause of action in RESTATEMENT (SECOND) OF TORTS, TENTATIVE DRAFT NO. 8, §§ 715-17 (1963), which at that time addressed the law of unfair competition, including the law of trademarks and trade names. *Id.* at 63, 270 N.W.2d at 172-73. The American Law Institute has more recently issued a separate title on the law of unfair competition, RESTATEMENT (THIRD) OF UNFAIR COMPETITION (1995), which contains revisions and additions to the RESTATEMENT (SECOND) OF TORTS sections that the supreme court adopted in *First Wisconsin Nat'l Bank.* We refer in this opinion to the pertinent sections of RESTATEMENT (THIRD) OF UNFAIR COMPETITION using the shorthand "RESTATEMENT."

[3] A trademark is a word or other designation, or combination of such designations, that is distinctive of a person's goods or services and that is used in a manner that identifies those goods or services and distinguishes them from the goods or services of others. A service mark is a trademark that is used in connection with services. RESTATEMENT § 9. The standard of common law trade name infringement is analogous to that

nation is protectable as a trade name only if the designation is distinctive. RESTATEMENT § 13 cmt. a. Designations can be either inherently distinctive or can acquire distinctiveness through use in connection with the business. RESTATEMENT § 13(a) and (b). Inherently distinctive designations are designations that are likely to be perceived by prospective purchasers as symbols of identification that indicate an association with a particular source. RESTATEMENT § 13 cmt. b.[4]

Designations that merely describe the nature or other characteristics of the business, called descriptive designations, are not inherently distinctive but can acquire distinctiveness through use. RESTATEMENT § 13(b). Acquired distinctiveness, also called secondary meaning, occurs when the relevant consuming public has come to recognize the designation as one that identifies the business. *Id.* Secondary meaning can be established through direct evidence, such as consumer surveys and customer testimony, or through circumstantial evidence, such as evidence of exclusivity of use, length and manner of the designation's use, amount

---

applicable to trademarks, and the provisions of the RESTATEMENT relating to infringement apply to trade names as well as trademarks. RESTATEMENT § 12 cmt. b. Because "Madison Repro" is used in connection with reprographic services, it could be considered a service mark. *See* RESTATEMENT § 9. However, since both parties call it a trade name, and since the analysis is the same, we consider it a trade name in this opinion.

[4] Inherently distinctive designations include fanciful (a coined term having no meaning other than identifying the source, such as EON); arbitrary (an existing word whose dictionary meaning has no apparent application to the particular product or service, such as SHELL for petroleum products); and suggestive (suggestive of the nature or characteristics of the product or business without being clearly descriptive, such as HERCULES for girders). RESTATEMENT § 13 cmt. c.

and manner of advertising, amount of sales, market share, and number of customers. *Spheeris Sporting Goods, Inc. v. Spheeris on Capitol*, 157 Wis. 2d 298, 312, 459 N.W.2d 581, 587-88 (Ct. App. 1990).[5]

A designation that is understood by prospective purchasers to denominate the general category, type or class of the goods, services or business with which it is used is a generic designation. RESTATEMENT § 15. The user of a generic designation can never acquire rights in that designation as a trade name. *Id.*

Once the plaintiff has established that the designation it seeks to protect is distinctive, either inherently so or through secondary meaning, it must prove that the defendant's use of a similar designation will cause a likelihood of confusion. This is also described as proving "confusing similarity."[6] The fac-

---

[5] In some portions of its brief, Madison Reprographics appears to assume that all trade names are protectable only with proof of secondary meaning. That is not the holding of *First Wisconsin Nat'l Bank v. Wiehman*, 85 Wis. 2d 54, 270 N.W.2d 168 (1978). The court there was presented with the argument that "First Wisconsin" was an arbitrary, fanciful or nondescriptive designation, but it expressly did not decide that issue because it was undisputed that the designation had acquired a secondary meaning. *First Wisconsin Nat'l Bank*, 85 Wis. 2d at 64, 270 N.W.2d at 173. The courts in *Spheeris Sporting Goods, Inc. v. Spheeris on Capitol*, 157 Wis. 2d 298, 314, 459 N.W.2d 581, 588 (Ct. App. 1990), and *Leon's Frozen Custard, Inc. v. Leon Corp.*, 182 Wis. 2d 236, 239, 513 N.W.2d 636, 638 (Ct. App. 1994), each required proof of secondary meaning for the trade names at issue. That was correct because, although neither case addressed this issue, the personal name of a person connected with a business is descriptive, not inherently distinctive. RESTATEMENT § 14.

[6] *See* 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23.01[3] (3d ed. 1996). The trial court

tors pertinent to proving likelihood of confusion are: the distinctiveness or "strength" of plaintiff's trade name; similarity of the defendant's designation to plaintiff's trade name; similarity and proximity of the goods or services offered by plaintiff and defendant; overlap of marketing channels; degree of care likely to be exercised by consumers in selecting the product or service; evidence of actual confusion; and defendant's intent when selecting its designation. *See Spheeris Sporting Goods*, 157 Wis. 2d at 309 n.4, 459 N.W.2d at 586.

*Standard of Review*

■

Whether a designation is generic, descriptive or inherently distinctive is a question of fact, *see* 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11.10[2] (3d ed. 1996) [hereinafter MCCARTHY ON TRADEMARKS], as is the determination of whether there is secondary meaning, *Spheeris Sporting Goods,* 157 Wis. 2d at 311, 459 N.W.2d at 587. The parties dispute whether the question of likelihood of confusion is a question of law or fact. Madison Reprographics is correct that in *Spheeris Sporting Goods* we stated that whether trade names are confusingly similar is a question of law. *Id.* at 309, 459 N.W.2d at 586. We cited a federal court decision, *Gaston's White River Resort v. Rush*, 701 F. Supp. 1431 (W.D. Ark. 1988), which represents the minority view among the federal courts. *See* MCCARTHY ON TRADEMARKS § 23.22[2][d].

used the term "deceptively similar" in addition to "likelihood of confusion." We understand the court to have used these terms interchangeably.

In *Spheeris Sporting Goods*, we did not discuss *First Wisconsin Nat'l Bank*, which upheld a trial court's finding of likelihood of confusion because it was "not contrary to the great weight and clear preponderance of the evidence." The "great weight and clear preponderance" standard is essentially the same as the "clearly erroneous" standard. *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). Nor did we discuss *Hirsch v. S. C. Johnson & Son, Inc.*, 90 Wis. 2d 379, 280 N.W.2d 129 (1979), in which the supreme court stated that the question of likelihood of confusion is a question for the jury. *Id.* at 403, 280 N.W.2d at 140. When a court of appeals decision conflicts with a supreme court opinion, we must follow the supreme court opinion. *State v. Clark*, 179 Wis. 2d 484, 493-94, 507 N.W.2d 172, 175 (Ct. App. 1993). Following *First Wisconsin Nat'l Bank* and *Hirsch*, we conclude that the question of whether use of a designation is likely to cause confusion with, or is confusingly similar to, the trade name or trademark of another is a question of fact.

We do not reverse a trial court's findings of fact unless they are clearly erroneous. *See* § 805.17(2), STATS. However, where the facts pertinent to a particular issue are undisputed, the application of a legal standard to those facts is a question of law, which we review de novo. *Woodson v. Kreutzer*, 190 Wis. 2d 189, 192, 526 N.W.2d 788, 790 (Ct. App. 1994).

*Likelihood of Confusion—Strength of "Madison Repro"*

The trial court did not decide whether "Madison Repro" is distinctive, and therefore entitled to protection as a trade name, before deciding that there was

insufficient likelihood of confusion. However, because the distinctiveness of a designation is pertinent both to likelihood of confusion as well as to the definition of trade name, we first consider whether "Madison Repro" is a distinctive designation.

The distinctiveness or "strength" of a trade name is the first factor in determining likelihood of confusion. *Spheeris Sporting Goods*, 157 Wis. 2d at 309 n.4, 459 N.W.2d at 586. The more distinctive a trade name is, the stronger it is and the greater the likelihood of confusion and scope of protection. MCCARTHY ON TRADE-MARKS § 20.43. A trade name that is descriptive is generally considered weaker than one that is inherently distinctive. RESTATEMENT § 21 cmt. i. However, this is not conclusive because the strength of a descriptive designation is also related to the strength of the showing of secondary meaning. *Id.*; MCCARTHY ON TRADEMARKS § 11.25[1][c].

Although the trial court did not decide whether "Madison Repro" is distinctive, it did state that it was assuming for purposes of argument that the designation had acquired secondary meaning. This implies a determination that "Madison Repro" is descriptive because secondary meaning is an issue only when a designation is descriptive. We may review the record to determine whether it supports the court's implicit finding that "Madison Repro" is descriptive. *See Schneller v. St. Mary's Hospital Medical Ctr.*, 162 Wis. 2d 296, 311-12, 470 N.W.2d 873, 879 (1991).

When a designation consists of two or more words, the designation as a whole must be considered to determine its distinctiveness, although each component part may first be considered separately. *See* MCCARTHY ON

TRADEMARKS § 11.10[1] and [2]. We agree with Cook's Reprographics that "Repro" is generic but, considering "Madison Repro" as a whole, we conclude that the court's implicit finding that the trade name is descriptive is not clearly erroneous.

Bonnie Young, an owner of Madison Reprographics, testified that "reprographics" describes the type of business her company engages in. It means the process of reproducing various types of photographic materials, both by manual procedures and digital publication. Young testified that "repro" is a shortened form of "reprographics." Young stated that Madison Reprographics belongs to an association which publishes the "Repro Report." Madison Reprographics began using "Madison Repro" in connection with its business primarily because that is how their customers referred to the business.

One of Cook's Reprographics' owners testified that "repro" has become just as common as "reprographics." There was also evidence that another company, Reprographics, Limited, operated on the west side and southwest side of Madison from 1971 until 1986. This company provided duplication services for architects and engineers. Its customers referred to it as "Repro Limited." An architect testified that "reprographics" is the process used to duplicate architectural drawings by photographic methods and that "reproduction" is a more general term for making a copy. Any architect would know that "repro" is short for either "reprography" or "reproduction."

Although the trial court did not make a finding that "reprographics" is generic, we conclude as a matter of law, based on the undisputed facts, that it is. It names the class or type of services Madison

Reprographics provides. The court did find that "repro" is the commonly-used short version of "reprographics." An abbreviation of a generic term is also generic if the potential purchasers recognize it as an abbreviation. *See G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 993-995 (7th Cir. 1989); MCCARTHY ON TRADEMARKS § 12.12[1]. We conclude that "repro" is generic because it is recognized as an abbreviation for "reprographics" by the customers and potential customers of reprographics service providers.

The court did not make any findings on the distinctiveness of "Madison." We conclude as a matter of law that "Madison" is a descriptive term since it describes the geographic location of Madison Reprographics' business. *See* RESTATEMENT § 14 (a geographical term descriptive of the location of the business is descriptive). We also conclude that the evidence supports a determination that "Madison," in combination with "Repro," retains its descriptive character such that "Madison Repro" is descriptive of the location of Madison Reprographics' business.[7]

---

[7] *First Southern Fed. Sav. & Loan Ass'n of Mobile v. First Southern Sav. & Loan Ass'n of Jackson County*, 614 F.2d 71 (5th Cir. 1980), is to the contrary. That case holds that the combination of a generic term and a geographic term is not subject to protection under Mississippi trade name infringement law. *Id.* at 74. This appears to be the minority view and we do not adopt it. Numerous other courts have held that a designation consisting of a geographic term combined with a generic term is protectable upon proof of secondary meaning. *See, e.g., Bank of Texas v. Commerce Southwest, Inc.*, 741 F.2d 785, 787 (5th Cir. 1984) ("Bank of Texas"); *Shames v. Coontz*, 882 F. Supp. 1173, 1174 (D. Mass. 1995) ("Newbury Dental"); *Trans Pacific Ins. Co. v. Trans-Pacific Ins. Co.*, 739 F. Supp. 240, 244 (E.D. Pa. 1990) ("Trans Pacific Insurance"); *Midwest Research Inst. v. S & B*

As a highly descriptive designation, "Madison Repro" is a weak mark, unless there is strong evidence of secondary meaning. Although the court did not make a finding on secondary meaning, its ruling that there was insufficient likelihood of confusion and its comments on the use by others of "repro" implies that it found the evidence of secondary meaning was not sufficient to make "Madison Repro" a strong mark. The record supports this implicit finding.[8]

The direct evidence of secondary meaning was sparse. There was no consumer survey. Direct consumer testimony consisted of the testimony of one architect that he knew Madison Reprographics as "Madison Repro"; another architect who testified that he knew Madison Reprographics as "Madison Reprographics," "Madison Repro" and "Repro"; and letters from two customers to "Madison Repro." A delivery person testified that he knew Madison Reprographics as "Madison Repro." The direct consumer testimony does not show that a significant number of prospective purchasers recognize "Madison Repro" as distinctive. *See* RESTATEMENT § 13 cmt. e.

The circumstantial evidence of secondary meaning consisted of the following undisputed testimony. Madison Reprographics has operated under the name "Madison Repro" since 1982 or 1983 and no other company in Madison has operated under that name,

*Promotions, Inc.*, 677 F. Supp. 1007, 1011-12 (W.D. Mo. 1988); *Great Southern Bank v. First Southern Bank*, 625 So. 2d 463, 469 (Fla. 1993).

[8] Evidence on secondary meaning may be enough to qualify a descriptive designation as a trademark or trade name but not enough to make the designation strong enough to prevent a particular defendant's use. MCCARTHY ON TRADEMARKS § 11.25[1][c].

although other firms have been known by names containing the word "repro." "Madison Repro" is displayed on letterhead, envelopes, business cards, signs, vehicles and t-shirts worn by employees. Madison Reprographics has spent several thousand dollars annually, on average, advertising the name "Madison Repro." This includes $27,500 spent to hire a marketing firm, beginning in 1992. The company had sales of over one million dollars in 1993. The primary method of advertising is word of mouth. The company also does print advertising under the name "Madison Repro" and has advertised in the yellow pages under that name since 1984. Newspaper articles on the company, using the name "Madison Repro," appeared in 1993, the year Madison Reprographics filed suit.

Although secondary meaning may be inferred from evidence of exclusive use, advertising efforts and amount of sales, the trial court could properly have found that the circumstantial evidence in this case does not show that the highly descriptive "Madison Repro" has become a strong trade name for purposes of determining "likelihood of confusion."

*Likelihood of Confusion—Other Factors*

The court found the degree of similarity between "Madison Repro" and "Repro Plus" to be minimal, observing that the word "repro" is the commonly-used shortened version of "reprographics." When the word common to two designations is generic, as we have held "repro" is, the focus of inquiry is upon the confusing similarity of the non-generic portions. MCCARTHY ON TRADEMARKS § 23.15[7]. There is nothing similar about

"Madison" and "Plus." The court's finding of minimal similarity is not clearly erroneous.

The court found that Madison Reprographics and Cook's Reprographics are engaged in similar businesses, and that, to a large extent, their customers are the same. There is no dispute over these findings. The court also found that the customers of both companies are "expert consumers and less likely to be confused than the average citizen." Professionally and technically-trained consumers can be expected to exercise a higher degree of care than "the ordinary purchaser" in consuming products or services related to their profession, making confusion less likely. *See* 3A RUDOLPH CALLMANN, CALLMANN UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 20.12 (4th ed. 1996). The record supports the court's finding on this factor. The court also found there was no "intent to deceive" by Cook's Reprographics, and Madison Reprographics does not challenge this finding.

Madison Reprographics challenges the trial court's finding that "[t]here has been some confusion among customers of the Plaintiff but the confusion has been brief, temporary and quickly remedied." It argues that because there was some evidence of actual confusion, this finding is clearly erroneous. We do not agree.

Although evidence of actual confusion may be strong evidence of likelihood of confusion, minimal evidence, such as isolated instances of actual confusion, does not necessarily establish a likelihood of confusion. *See* MCCARTHY ON TRADEMARKS § 23.02[2][a]. Rather, the number and nature of the instances of confusion must be viewed in context to make an informed decision. *Id.*

The evidence of actual confusion consisted of the following testimony. Two architects testified that when they received a mailing from Repro Plus, Inc.,[9] their initial impression was that it was from Madison Reprographics. These initial misimpressions were corrected, in one case by a second look at the material, and in the other by an inquiry. A graphic artist testified that he confused the names "Madison Repro" and "Repro Plus" when speaking to someone at Madison Reprographics. A delivery person testified that he arrived at Madison Reprographics with a package for Repro Plus, Inc. because he did not read the bill of lading completely; he saw the word "repro" and thought it meant Madison Reprographics and did not read the address. One of the owners of Madison Reprographics testified that other deliveries meant for Repro Plus, Inc. were misdelivered to Madison Reprographics, but did not provide specifics.[10] The owner of Cook's Reprographics testified that Cook's Reprographics has not experienced any instance of confusion between its company and Madison Reprographics. The record supports the trial court's finding that the instances of confusion were minimal.

In summary, although the similarity of the businesses and clients of each company favors a finding of likelihood of confusion, the rest of the factors do not:

---

[9] The former name of Cook's Reprographics, Repro Plus, Inc., is used in this paragraph because that was the company's name at the time this incident occurred.

[10] The testimony of a friend of a shareholder in Madison Reprographics who is not a customer or potential customer is not relevant. *See Coherent, Inc. v. Coherent Technologies, Inc.*, 736 F. Supp. 1055, 1066 (D. Colo. 1990), *aff'd*, 935 F.2d 1122 (10th Cir. 1991).

weakness of "Madison Repro"; minimal similarity to "Repro Plus"; sophistication of customers; lack of intent to deceive; and minimal evidence of actual confusion. We conclude the trial court's finding that there was no likelihood of confusion is not clearly erroneous.

## STATUTORY CLAIM

Madison Reprographics' statutory claim turns on an interpretation of §§ 132.033 and 132.001, STATS.[11] The interpretation of a statute and the application of that statute to a set of facts presents a question of law which we review de novo. *Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 166, 361 N.W.2d 673, 677 (1985).

---

[11] Apparently, before the trial court, Madison Reprographics referred to § 132.01, STATS., as the basis for its cause of action, and requested relief under § 132.033, STATS. Therefore, the trial court considered the language in § 132.01 that the affidavit to be filed with the Secretary of State must state that no other entity has the right to use the mark sought to be registered either in identical form or "in any such near resemblance thereto as may be calculated to deceive." The court also considered the language in § 132.02(3), STATS., that makes it unlawful to "make use, with intent to deceive, of that mark or any counterfeit mark which is identical to or substantially identical to that mark." The court found that Cook's Reprographics did not intend to deceive in using its logo and therefore dismissed the statutory claim. The court did not consider the definition of "counterfeit" in § 132.001(1), STATS.

Cook's Reprographics asserts that Madison Reprographics must show Cook's Reprographics intended to deceive in order to recover under § 132.033, STATS. Because of our conclusion that the Repro Plus logo is not identical or substantially identical to the registered mark, we do not decide the meaning of "spurious" in § 132.001, STATS., or whether relief under § 132.033(1), (2)(b) and (2)(d) require proof of intent to deceive.

Section 132.033(1), STATS., provides that every person "using a mark may . . . enjoin the . . . use . . . of any counterfeit mark identical to or substantially identical to that mark." Section 132.033(2), STATS., specifies the remedies available in addition to an injunction.

Section 132.001, STATS., provides in part:

> (1) "Counterfeit mark" means a spurious mark that is identical to or substantially identical to a genuine mark and that is used or intended to be used on or in connection with goods or services for which the genuine mark is registered and in use. . . .
>
> (2) "Mark" means a label, trademark, trade name . . . that is adopted or used by any person to designate, make known or distinguish any goods or service as having been made, prepared or provided by that person and that is registered by that person under s. 132.01.

Madison Reprographics contends that because it has registered "Madison Repro" in a design format with the Secretary of State, it is entitled to an injunction, monetary damages and attorney fees under § 132.033(1), (2)(b) and (2)(d), STATS. Cook's Reprographics responds that its Repro Plus logo is not identical or substantially identical to the registered mark, as required by the definition of counterfeit, and therefore its logo is not a counterfeit mark. The parties' dispute centers on the degree of similarity required and the factors that should be considered in making the determination of "identical to or substantially identical to." Because this is not clear from the language of the statute, we may look to the scope, history, context, subject matter and object of the statute in order to ascertain the intent of the legislature. *See Ball v. Dist.*

*No. 4, Area Bd.*, 117 Wis. 2d 529, 538, 345 N.W.2d 389, 394 (1984).

Since the enactment of the first version of this statute in 1891[12] until amendments in 1985, the statute permitted injunctions against use of "counterfeits or imitations" without defining either term. 1985 Wis. Act 181 added § 132.001, STATS., defining "counterfeit mark," and deleted reference to "imitations" in § 132.033, STATS., and related sections.[13] These and other changes to § 132.033 and related sections were made in the context of repealing and recreating § 132.20, STATS. ("Trafficking in counterfeit marks"), which was the focus of 1985 Wis. Act 181.[14] Section 132.20 provides criminal penalties for intentionally trafficking in counterfeit marks, or in goods or services bearing counterfeit marks. Memoranda accompanying the various drafts of 1985 Wis. Act 181 show that federal legislation creating criminal penalties for trafficking in counterfeit marks was the impetus for the legislative proposals finally passed in 1985 Wis. Act 181.[15]

The definition of "counterfeit mark" in § 132.001(1), STATS., closely tracks the definition of "counterfeit mark" in the federal counterfeit trafficking statute, 18 U.S.C. § 2320(d), which was taken from the definition in the federal trademark statute, 15 U.S.C. §§ 1114-1127 (Lanham Act). 15 U.S.C. § 1127 defines "counterfeit" as "a spurious mark which is identical

---

[12] *See* Laws of 1891, ch. 280.

[13] 1985 Wis. Act 181, §§ 1 and 7.

[14] 1985 Wis. Act 181, § 11.

[15] *See, e.g.,* Legislative Reference Bureau Drafting Record for 1985 Wis. Act. 181, Wisconsin Legislative Council Staff Memorandum from Shaun Haas, Senior Staff Attorney, to Representative James Rutkowski (Dec. 1, 1983).

with, or substantially indistinguishable from, a registered mark." This definition is in contrast to the Lanham Act's definition of "colorable imitation," which "includes any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive." 15 U.S.C. § 1127. " 'Colorable imitation' is an archaic formulation of the traditional likelihood of confusion basis for infringement and is the legal theory of most civil trademark infringement litigation. . . . [T]he Lanham Act carves out 'counterfeit' as a more egregious type of 'colorable imitation.' " MCCARTHY ON TRADEMARKS § 25.01[5][a]. Colorable imitations are "merely infringements, judged by whether they are likely to cause the public to associate the copying mark with the recorded mark. [Counterfeit] marks . . . not only infringe but in addition are such close copies that they amount to counterfeits." *Montres Rolex, S.A. v. Snyder*, 718 F.2d 524, 528 (2d Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984) (referring to federal custom laws and regulations which track the Lanham Act definitions). *See also Pepe (U.K.) Ltd. v. Ocean View Factory Outlet Corp.*, 770 F. Supp. 754, 758 (D. P.R. 1991).

■■■

Because 1985 Wis. Act 181 deleted reference to "imitations" in § 132.033, STATS., and adopted a definition for "counterfeit mark" that closely tracks the Lanham Act definition of counterfeit, we conclude that "identical to or substantially identical to" in § 132.001, STATS., means that the challenged designation must be an exact copy of the registered mark or substantially indistinguishable from it. This requires a higher degree of similarity between the registered mark and the challenged mark than is required for an ordinary trademark infringement claim.

The trial court did not determine whether the registered mark and the Repro Plus logo were identical or substantially identical. However, because the pertinent facts are undisputed, we determine this issue as a matter of law.

The registered mark and the Repro Plus logo are not identical. They are also not substantially identical or substantially indistinguishable. Each has a word or words the other does not have. They have different fonts, reverse color schemes and different overall shapes. While there are some similarities—red and white color schemes and the word "repro"—the registered mark and the Repro Plus logo are readily distinguishable.

*By the Court.*—Judgment affirmed.