**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 26, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1041**

Cir. Ct. No.  **2018CV2154**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

GREGORY A. THOMPSON,

    PLAINTIFF-APPELLANT,

  V.

MICHAEL D. FREDE, VENTURESPACE LLC,
VS CAPITOL DRIVE LLC AND MICHAEL D. FREDE,

    DEFENDANTS-RESPONDENTS,

ANDREA JOHNSON, ENCOMPASS REALTY LLC,
KONIGIN DEVELOPMENTS LLC, ALFRED C. WAGNER
AND COMMERCIAL CONDOS LLC,

    DEFENDANTS.

        APPEAL from an order of the circuit court for Waukesha County: MICHAEL O. BOHREN, Judge. *Affirmed.*

        Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Gregory A. Thompson, pro se, appeals the circuit court's grant of summary judgment to defendants Michael D. Frede, in his individual capacity and in his capacity as sole trustee of the Frede Trust, and VentureSpace LLC and VS Capitol Drive LLC.  He also appeals the circuit court's denial of his partial summary judgment motion.  Thompson argues the circuit court erred by granting summary judgment in favor of the defendants and denying him partial summary judgment.  We reject his arguments and affirm.

## BACKGROUND

¶2     Thompson created StorageShopUSA, which is an entity that develops condominium storage unit facilities and sells individual storage units.  Each storage unit "is a commercially zoned big garage you can utilize for storage, business or personal needs."  There are twenty-one StorageShopUSA developments in Wisconsin, and Thompson has sold 280 individual storage units.

¶3     Frede was interested in this area of real estate and contacted Thompson.  Frede considered purchasing Thompson's newest storage development in Delafield, and Thompson shared details about his business.  No deal between the two for the purchase of the development came to fruition.  Thompson, however, agreed to let Frede build and sell a storage building in the Delafield development.  Thompson created a manual setting forth his development, which he gave to Frede without any required written agreement.  Thompson also gave Frede a set of development plans.

¶4      During this time, and unbeknownst to Thompson, Frede created his own condominium storage development. Frede hired his own architect to design his development, purchased the land, obtained the permits from local governing bodies, oversaw the construction, and had a role in the marketing and sales. In marketing the units for his condominium storage development, Frede used pictures of Thompson's storage condominiums and relied on his affiliation with Thompson through the Delafield development. We include some examples of the disputed photographs used by Frede below:

 



¶5      Ultimately, Thompson brought suit against Frede and others (collectively, "Frede").[1] Thompson alleged Frede misappropriated his trade secrets, participated in unfair competition under the theories of trademark and trade dress infringement and misappropriation, and was unjustly enriched.

---

[1] Thompson brought suit against eleven parties, who given their different interests, naturally divided into three defendant groups, each represented by a different attorney. Only the defendant group comprised of Michael Frede, VentureSpace LLC, and VS Capitol Drive LLC remains. During the course of litigation, each defendant group filed separate motions and responses relating to summary judgment; however, they collectively joined into each other's motions and responses.

¶6      Thompson then brought a motion for partial summary judgment on his unfair competition claims of trademark and trade dress infringement and misappropriation.  Frede opposed the motion, but did not separately move for summary judgment.  In support, Frede argued Thompson's summary judgment materials did not establish that, as a matter of law, he had a protectable trademark or trade dress and the materials failed to establish the elements necessary to prove a common law misappropriation claim.

¶7      The court denied Thompson's motion, concluding first there was a genuine issue of material fact as to whether Thompson had a protectable trademark or trade dress—specifically, Thompson had not established that his purported trademark or trade dress had acquired secondary meaning.  As for Thompson's unfair competition claim based on misappropriation, the court concluded there was a genuine issue of material fact as to the "unfair nature of the competition and how [Thompson's] product was used to create unfair competition."

¶8      Three months later, Frede moved for summary judgment on all of Thompson's claims, arguing that, as a matter of law, Thompson was unable to prove up his claims.  Frede argued there was no trade secret misappropriation because the undisputed facts showed there was no contract and Thompson did not keep anything secret.  Frede asserted there was no unfair competition based on common law trademark or trade dress infringement because Thompson's storage units were not inherently distinctive, had not acquired secondary meaning, and the disputed photographs Frede used were merely illustrative of the same type of generic units he offered for sale.  Frede contended there was no unfair competition based on common law misappropriation because the creation of an identical or similar product is not misappropriation as long as the second party puts forth its

4

own time, effort, and money. The undisputed facts showed Frede hired his own architect to design his development, purchased the land, obtained the permits from local governing bodies, oversaw the construction, and had a role in the marketing and sales. Finally, Frede argued there was no unjust enrichment because Thompson did not confer a benefit onto Frede.

¶9 Thompson opposed the motion. He argued, in part, that the circuit court had already determined there existed a genuine issue of material fact on his unfair competition claims and the circuit court was bound by that determination. He also argued Frede failed to prove as a matter of law there was no trade secret misappropriation or unjust enrichment.

¶10 The circuit court granted Frede's motion for summary judgment. It first concluded there was no trade secret misappropriation because there were no restrictive agreements signed by Frede and no secrecy or efforts by Thompson to keep his condominium storage unit development technique secret.

¶11 The circuit court then concluded that, as a matter of law, there was no trademark or trade dress infringement. The photographs Frede used in marketing his own development were neither inherently distinctive nor had they become distinctive over time by acquiring a secondary meaning. The court reasoned:

> [T]he pictures that have been described, I'm satisfied, are not trademarks. I'm also satisfied that they don't come into being as being protected by trade dress. I see the pictures as simply generic pictures of a duplex garage. It has nothing distinctive about it to make it stand out from any other type of building.
>
> ….
>
> There was nothing, however, in the evidence presented by the Plaintiff that backs up the use of the pictures had any

> distinctive meaning to them that would relate immediately to StorageShopUSA.
>
> Now, the pictures were just pictures of a condo duplex garage unit. Perhaps there was more than one duplex building shown, but it was never inherently connected to that of the Plaintiff.

The court also concluded Thompson's unfair competition misappropriation claim was based on him having a protectable trademark and trade dress and, because the court determined there was no protectable trademark or trade dress, the court dismissed Thompson's misappropriation claim.

¶12    Finally, the court dismissed Thompson's claim for unjust enrichment because it was also based on Frede's use of Thompson's purported trademark, trade dress, and trade secrets and the court had already determined those claims failed as a matter of law. Thompson appeals.

## DISCUSSION

¶13    On appeal, Thompson objects to the circuit court's grant of summary judgment in favor of Frede on the claims of unfair competition and unjust enrichment. He "does not appeal the dismissal of the misappropriation of trade secrets claim." Thompson also appeals the circuit court's denial of his partial summary judgment motion on the unfair competition claims.

¶14    We review a grant of summary judgment de novo, using the same methodology as the circuit court. *Tews v. NHI, LLC*, 2010 WI 137, ¶40, 330 Wis. 2d 389, 793 N.W.2d 860. Summary judgment must be granted if the pleadings, depositions, answers to interrogatories, admissions and affidavits establish that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law. WIS. STAT. § 802.08(2) (2021-22).[2]

¶15 Further, "once sufficient time for discovery has passed, it is the burden of the party asserting a claim on which it bears the burden of proof at trial 'to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Transportation Ins. Co., Inc. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 291-92, 507 N.W.2d 136 (Ct. App. 1993) (citation omitted). "The party moving for summary judgment need only explain the basis for its motion and identify those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' that it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 292. "[T]he moving party need not support its motion with affidavits that specifically negate the opponent's claim." *Id.*

## I. Unfair competition claims

¶16 We begin with Thompson's arguments relating to his unfair competition claims. He argues the law of the case and judicial estoppel doctrines preclude the grant of summary judgment in favor of Frede on the unfair competition claims. Alternatively, and on the merits, Thompson emphasizes that he asserted two legal theories in support of his claim for unfair competition: (1) common law trademark and trade dress infringement and (2) misappropriation. He argues that he, not Frede, is entitled to summary judgment on these claims. We address each argument in turn.

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

### A. Law of the Case Doctrine; Judicial Estoppel

¶17    Thompson first argues the law of the case and judicial estoppel doctrines preclude a grant of summary judgment in favor of Frede on the unfair competition claims. He explains that because the circuit court denied Thompson's partial motion for summary judgment on the basis that there was a genuine issue of material fact, the circuit court was bound by that decision and could not later grant Frede's later motion for summary judgment. We disagree.

¶18    The law of the case doctrine does not apply to Frede's summary judgment motion. "The law of the case doctrine is a 'longstanding rule that a decision on a legal issue *by an appellate court* establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal.'" *State v. Stuart*, 2003 WI 73, ¶23, 262 Wis. 2d 620, 664 N.W.2d 82 (emphasis added). It generally binds the circuit court and appellate courts to apply decisions of the court of appeals and supreme court in subsequent proceedings. *Id.* Here, the circuit court's denial of Thompson's partial motion for summary judgment is not a decision on a legal issue by an appellate court. As such, the law of the case doctrine is inapplicable.

¶19    Judicial estoppel is an equitable doctrine that seeks to preserve the integrity of the judicial process by preventing litigants from "playing 'fast and loose with the courts by asserting inconsistent positions' in different legal proceedings." *State v. Ryan*, 2012 WI 16, ¶32, 338 Wis. 2d 695, 809 N.W.2d 37 (citation omitted). There are three elements that must be shown for judicial estoppel to apply: "(1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *Id.*,

¶33. We review de novo whether the elements are present; however, the decision to invoke judicial estoppel is subject to the circuit court's discretion. *Id.*, ¶30.

¶20 Thompson did not ask the circuit court to invoke judicial estoppel. *See Gibson v. Overnite Transp. Co*., 2003 WI App 210, ¶9, 267 Wis. 2d 429, 671 N.W.2d 388 ("[W]e will not consider on appeal arguments not made to the trial court."). In any event, even if the circuit court implicitly decided not to invoke the doctrine, which is what Thompson argues, we conclude the elements of judicial estoppel are not present in this case. We disagree with Thompson that the positions taken by Frede were "clearly inconsistent." Rather, in opposing Thompson's partial summary judgment motion, Frede argued Thompson failed to put forth sufficient undisputed facts that established, as a matter of law, Thompson's unfair competition claims. Then, in moving for summary judgment, Frede argued Thompson did not have sufficient facts to establish his claims at trial and therefore Frede was entitled to judgment. These positions are not "clearly inconsistent." In fact, they are consistent.

### B. Trademark and Trade Dress Infringement

¶21 Thompson next argues that he, not Frede, was entitled to summary judgment on his trademark and trade dress infringement claims. Wisconsin has adopted the trademark definitions and practices from the Restatement (Third) of Unfair Competition. *Madison Reprographics, Inc. v. Cook's Reprographics, Inc.*, 203 Wis. 2d 226, 234 n.2, 552 N.W.2d 440 (Ct. App. 1996). The Restatement defines trademark as "a word, name, symbol, device, or other designation, or a combination of designations, that is distinctive of a person's goods or services and that is used in a manner that identifies those goods or services and distinguishes them from the goods or services of others."

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 9 (AM. L. INST. 1995). A trademark is a mark used to identify the source of goods, generally used in the marketing of the goods. *Id.* cmt. f.

¶22 A trademark is valid if "it is recognized by the public as identifying and distinguishing plaintiff's goods or services." *Echo Travel, Inc. v. Travel Associates, Inc.*, 870 F.2d 1264, 1266 (7th Cir. 1989); *see also* *Ritter v. Farrow*, 2021 WI 14, ¶25, 395 Wis. 2d 787, 955 N.W.2d 122 (noting that because Wisconsin's trademark jurisprudence is undeveloped, "we look to federal law for guidance and key principles"). A valid trademark is either inherently distinctive or has become distinctive over time by acquiring a secondary meaning. *Echo Travel*, 870 F.2d at 1266.

¶23 "Inherently distinctive designations are designations that are likely to be perceived by prospective purchasers as symbols of identification that indicate an association with a particular source." *Madison Reprographics*, 203 Wis. 2d at 235.

> Inherently distinctive designations include fanciful (a coined term having no meaning other than identifying the source, such as EXXON); arbitrary (an existing word whose dictionary meaning has no apparent application to the particular product or service, such as SHELL for petroleum products); and suggestive (suggestive of the nature or characteristics of the product or business without being clearly descriptive, such as HERCULES for girders).

*Id.* at 235 n.4 (citing RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 13 cmt. c.).

¶24 "Designations that merely describe the nature or other characteristics of the business, called descriptive designations, are not inherently distinctive but can acquire distinctiveness through use." *Id.* "Acquired distinctiveness, also

called secondary meaning, occurs when the relevant consuming public has come to recognize the designation as one that identifies the business." *Id.*

¶25    The elements of common law trademark infringement are (1) the validity of the mark and (2) infringement. *Echo Travel*, 870 F.2d at 1266. In order to survive summary judgment, or be entitled to summary judgment in his own right, Thompson, as the plaintiff, had the burden of proof on all of the elements. *See Hunzinger*, 179 Wis. 2d at 291-92.

¶26    The circuit court determined that the disputed photographs used by Frede to market his own development were not, as a matter of law, a valid trademark or trade dress. We agree.

¶27    First, the photographs are not inherently distinctive. The photographs depict neutral colored duplex garages with a gable roof, white trim, and white garage doors. The Restatement (Third) of Unfair Competition provides:

> Commonplace symbols and designs are not inherently distinctive since their appearance on numerous products makes it unlikely that consumers will view them as distinctive of the goods or services of a particular seller. Thus, unless the symbol or design is striking, unusual, or otherwise likely to differentiate the products of a particular producer, the designation is not inherently distinctive.

*Id.* § 13 cmt. d. There is nothing striking or unusual in the disputed photographs that would distinguish Thompson's condominium buildings from another's buildings.

¶28    Accordingly, to be protected as a valid trademark, Thompson needed to show the photographs had become distinctive over time by acquiring a secondary meaning. *See Madison Reprographics*, 203 Wis. 2d at 235. "Secondary meaning can be established through direct evidence, such as consumer

surveys and customer testimony, or through circumstantial evidence, such as evidence of exclusivity of use, length and manner of the designation's use, amount and manner of advertising, amount of sales, market share, and number of customers." *Id.* at 235-36.

¶29     Thompson, however, did not put forth sufficient evidence that would establish the disputed photographs had become distinctive over time by acquiring a secondary meaning.  He did not introduce any direct evidence of secondary meaning in the form of customer testimony or consumer surveys that established any association between the disputed photographs and StorageShopUSA.  *See Madison Reprographics*, 203 Wis. 2d at 235.  Although Thompson introduced emails from potential customers who contacted him wanting to purchase a storage unit, none of the emails referenced a photograph and did not establish any association between the disputed photographs and StorageShopUSA.

¶30     Similarly, Thompson's circumstantial evidence was insufficient to establish the disputed photographs acquired secondary meaning.  With regard to exclusivity and advertising, although Thompson asserts that he consistently used the disputed photographs in his own advertising for years, this sheds little probative light on the question of whether consumers associated the disputed photographs with StorageShopUSA.  *See Echo Travel*, 870 F.2d at 1270 ("it is the *effect* or success of the advertising, not the mere *fact* of advertising, that is the test of secondary meaning") (citation omitted).  Thompson did not offer any evidence demonstrating how the disputed photographs were viewed, appreciated, and acted on by consumers.  *See id.* (concluding evidence that 25,000 posters containing a disputed photograph that were distributed to 200 college campuses was, standing alone, insufficient to raise a genuine issue of material fact as to the existence of secondary meaning).

12

¶31    As to the amount of sales and number of customers, Thompson argues that the fact that he sold 280 units in the past sixteen years while using photographs of his storage condominiums created a genuine issue of material fact as to whether consumers associated the disputed photographs with StorageShopUSA. We disagree. Thompson's sale volume figure, by itself, fails to raise a genuine issue as to whether the disputed photographs have acquired secondary meaning. *See **Echo Travel***, 870 F.2d at 1271 (concluding that because the plaintiff presented no evidence of how its sales were impacted by using the photograph, the sales volume figures failed to raise a genuine issue as to the photograph's impact on sales and, thus, on the question of whether the photograph acquired secondary meaning).

¶32    Finally, as to Thompson's established place in the market, Thompson argues that StorageShopUSA is the dominant storage condominium development company. He asserts there are more StorageShopUSA locations than any other storage company. He also offers an affidavit from a CEO of a digital marketing firm who averred that when a consumer searches google.com with the terms, "storage condo wisconsin," "storage condos wisconsin," "storage condominiums wisconsin," "office warehouse condo" or "garage condo wisconsin" that StorageShopUSA's website is the first returned result. However, StorageShopUSA's word search popularity and internet presence along with Thompson's testimony that StorageShopUSA is dominant does not establish StorageShopUSA's established place in the market such that the disputed photographs have acquired secondary meaning. *See **Echo Travel***, 870 F.2d at 1271 (concluding the company president's testimony that his company was the dominant firm in the market was insufficient to show an established place in the

market and failed to raise a genuine issue of material fact on whether the disputed photographs acquired secondary meaning).

¶33 Based on the above, we agree with the circuit court and conclude that, as a matter of law, Thompson has failed to prove the disputed photographs acquired secondary meaning such that they are a protectable trademark.

¶34 As for Thompson's allegations regarding trade dress infringement,

> Trade dress is defined as a product's total image and refers to the total image of a product, including features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques. Moreover, it includes not only the packaging or dressing of a product but can also encompass the design of a product.

*Fireman's Fund Ins. Co. of Wisconsin v. Bradley Corp.*, 2003 WI 33, ¶28, 261 Wis. 2d 4, 660 N.W.2d 666 (internal citations omitted). Like trademark, the purpose of trade dress "is to enable a business to identify itself as the source of a given product through the adoption of some distinctive mark." *Id.* Trade dress is protectable if the design is distinctive (either inherently distinctive or distinctive through secondary meaning) *and* if the design is not functional. *See* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 16.

¶35 Here, relying on the same analysis from above, the disputed photographs are neither inherently distinctive nor distinctive through secondary meaning. The disputed photographs are not protectable trade dress.[3]

---

[3] Because we determine the disputed photographs are not distinctive, we need not determine whether the design is functional. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44, (1997) ("An appellate court should decide cases on the narrowest possible grounds.").

¶36    Because Thompson does not have sufficient evidence to prove the disputed photographs constitute protectable trademark or trade dress, Thompson cannot prove his unfair competition claims for common law trademark or trade dress infringement.  The circuit court properly granted summary judgment in Frede's favor and denied Thompson's motion for partial summary judgment on this issue.

### C. Misappropriation

¶37    Thompson next argues that the circuit court erred by granting summary judgment in favor of Frede on Thompson's unfair competition misappropriation claim.  He concedes the circuit court properly denied Thompson's motion for partial summary judgment on this issue, but argues the circuit court erred by granting summary judgment in favor of Frede on this issue based on the law of the case doctrine.

¶38    We, however, already determined the law of the case doctrine did not preclude the circuit court from granting Frede's motion for summary judgment.  That determination also applies to the circuit court's grant of summary judgment on the misappropriation claim.

¶39    In any event, the elements of unfair competition misappropriation are "(1) time, labor, and money expended in the creation of the thing misappropriated' (2) competition; and (3) commercial damage to the plaintiff." *Mercury Record Productions, Inc. v. Economic Consultants, Inc.*, 64 Wis. 2d 163, 174, 218 N.W.2d 705 (1974).  Thompson, as plaintiff, has the burden of proving misappropriation. *See Hunzinger*, 179 Wis. 2d at 291-92.

¶40    The creation of an identical or similar product is not misappropriation. ***Mercury Record***, 64 Wis. 2d at 184. "The wrong is not in the copying, but in the appropriation, of the plaintiff's time, effort, and money." ***Id.*** at 175. Here, it is undisputed that Frede hired his own architect to design his own development, purchased the land, obtained all the necessary permitting from the local governing body, oversaw construction of his developments, and had a role in marketing and sales. This is not misappropriation.

## II.    Unjust Enrichment

¶41    Finally, Thompson argues the circuit court erred by granting Frede's motion for summary judgment on Thompson's unjust enrichment claim. Unjust enrichment is an equitable remedy where, if there is no express contract, it is nonetheless unjust or inequitable for one party to fail to pay for a benefit furnished by another. ***Gebhardt Bro., Inc. v. Brimmel***, 31 Wis. 2d 581, 583, 143 N.W.2d 479 (1966). The plaintiff must prove "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances [that] make it inequitable" to retain without payment. ***Id.*** at 584.

¶42    Thompson devotes a single paragraph in his brief-in-chief in support of his argument that the circuit court erred by dismissing his unjust enrichment claim:

> The court stated the unjust enrichment claim failed because it determined there were no trademarks, trade dress, or trade secrets. The court cited no authority that supports the position that if a claim doesn't necessarily rise to protected intellectual property, an unjust enrichment claim would not be valid. Defendants did not raise the argument either. The court's decision to dismiss the unjust enrichment claim was arbitrary and the decision to grant summary judgment on the unjust enrichment claim should be reversed.

16

¶43 Thompson's argument, however, misses the mark. The circuit court did not conclude one must have protected trademark, trade dress, or trade secrets in order to pursue an unjust enrichment claim. Rather, the circuit court concluded that, in this case, Thompson's claim for unjust enrichment was based on Frede's use of Thompson's trademark, trade dress, and trade secrets under circumstances that would make it inequitable for Frede to retain these benefits without payment. However, because Thompson did not establish he had a valid trademark and trade dress or even maintained trade secrets, we agree with the circuit court that Thompson's unjust enrichment claim likewise failed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.