STATE of Wisconsin, Plaintiff-Respondent,

v.

Paul J. STUART, Defendant-Appellant.

Supreme Court

*No. 01–1345–CR. Oral argument April 10, 2003.—Decided July 1, 2003.*

2003 WI 73

(Also reported in 664 N.W.2d 82.)

For the defendant-appellant there were briefs by *Christopher W. Rose* and *Rose & Rose,* Kenosha, and oral argument by *Christopher W. Rose.*

For the plaintiff-respondent the cause was argued by *Jeffrey J. Kassel,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. JON P. WILCOX, J. This case comes before the court on certification from the court of appeals pursuant to Wis. Stat. (Rule) § 809.61 (1999–2000). The overriding issue requiring our examination is whether a previous order entered by the court in this case establishes the "law of the case."

¶ 2. The legal questions raised here revolve around the propriety of admitting a witness's preliminary hearing testimony in a criminal trial. In February 1999, Paul Stuart, the defendant, was convicted of first-degree intentional homicide. He was convicted following a jury trial in which the Kenosha County Circuit Court, Michael S. Fisher, Judge, allowed the preliminary hearing testimony of the defendant's brother, John Stuart, to be read into evidence. The circuit court had initially excluded this preliminary hearing testimony. However, the State sought immediate review of that ruling. The court of appeals summarily affirmed the circuit court's ruling, but this court granted the State's emergency petition for review and reversed the court of appeals.

¶ 3. The defendant now asserts that this court's previous order did not establish the law of the case

because it involved a mere discretionary ruling and did not state reasons for its reversal of the court of appeals. These are the issues specifically raised by the court of appeals' certification.[1] We hold that our previous ruling did establish the law of this case. We also conclude that although this court has the authority to make an exception to the law of the case doctrine under certain circumstances, such circumstances do not exist in this case. We therefore affirm the circuit court's judgment of conviction.

¶ 4. The defendant also raises numerous other issues on appeal.[2] We remand these issues for consideration by the court of appeals.

---

[1] Stuart raised other issues in his appeal. The court of appeals noted these issues in its certification to this court, but specifically stated: "We deem none of these issues worthy of certification."

[2] According to the defendant's brief, the other questions he raises on appeal are as follows:

> 1) Whether trial counsel was ineffective where he failed to stipulate to a pending subornation of perjury charge by John Stuart?
>
> 2) Whether the trial court erred for failing to inform the jury concerning the significant criminal charges John Stuart was facing at the time he gave a statement?
>
> 3) Whether the trial court erred when it barred the defendant from arguing John Stuart's bias?
>
> 4) Whether or not new evidence warrants a new trial?
>
> 5) Whether the failure of defense counsel to inform the jury that Arthur Parramoure had a criminal conviction would entitle defendant to a new trial?
>
> 6) Whether trial counsel was ineffective for failing to object to evidence of the nature of Paul Stuart's criminal convictions?
>
> 7) Whether Paul Stuart's conviction should be reversed in the interest of justice?

(Def's. Brief at 1–2.)

## I. BACKGROUND

¶ 5. The relevant facts are undisputed. As noted, this case is now before us for the second time. To better understand the issues presented, we discuss the relevant facts surrounding our first decision as well as those leading up to our review on certification.

¶ 6. On March 27, 1990, Gary Reagles was found dead in his apartment with a gunshot wound to the chest. A Berretta nine millimeter gun was found on the floor near the body. Reagles had a history of emotional problems and his girlfriend told police that he had been threatening suicide because of their impending breakup. His death was initially ruled a suicide.

¶ 7. In 1998, Paul Stuart (Paul) was charged with the first-degree intentional homicide of Reagles. A preliminary hearing was held on August 13, 1998, and included testimony by Paul's brother, John Stuart (John), implicating Paul in the shooting.

¶ 8. John testified at the preliminary hearing that between 5:00 and 7:00 a.m. on the morning Reagles' body was found, Paul came to his house and spoke with him. Paul told him that he had been out partying with Reagles the night before, drinking and getting high on cocaine. John then testified that about a half hour into the early morning conversation with Paul, Paul admitted to him that he shot Reagles because he was going to say something about a burglary perpetrated a week or two before by John and Paul.

¶ 9. John testified that he and Paul had robbed a home in Illinois a short time before Reagles' death. They had stolen coins, pocketknives, and some guns. One of the guns was a Berretta nine millimeter. John testified that Paul had possession of that particular weapon following the burglary. According to John's

626

testimony, Paul appeared to be scared, distraught, and confused when talking to him about the shooting. John testified that Paul told him that after he shot Reagles, he "fixed it to look like a suicide."

¶ 10. John stated that later on the same day, George Stuart, another of the Stuart brothers, came over and told him that Reagles had been found dead in his apartment. Reagles was the son of George Stuart's girlfriend. Paul was there when George Stuart told John about Reagles' death. John testified that Paul acted surprised when told about the shooting, as if he knew nothing about it. Later, Paul asked John to provide him with an alibi. He asked John to say that he had been at John's home at the time of the shooting. Finally, John testified that Paul left the state on a trip to Arizona within a week of Reagles' death.

¶ 11. On cross-examination, John acknowledged that defendant's trip to Arizona was not unusual since their mother lived there. He acknowledged that he first told police about the information he had regarding Reagles' death when he was stopped for a traffic offense in 1992 or 1993. He stated that he gave another statement to police in June of 1998.[3] The defense counsel then asked about the circumstances under which John gave this statement, which drew an objection from the State. The exchange regarding that June 1998 statement was as follows:

> Q Did you have occasion to give that [information you testified to today] to Detective Tappa in June of this year?
>
> A Did I?

---

[3] According to the record, John gave a third statement to police on April 21, 1998, relating to the information he had about his brother's involvement in Reagles' death.

Q Yes.

A Yes.

Q And under what circumstances did you do that?

MR. JAMBOIS: Objection. Irrelevant.

MR. SUMPTER: It's very relevant under what circumstances the statements that he has testified to as they relate to the criminal complaint in the statement in June 1, 1998.

MR. JAMBOIS: It's discovery. Your Honor, it pertains to credibility, but not to plausibility.

COURT: I think it goes to the credibility issue certainly, and it certainly is discovery. So the objection is sustained.

¶ 12. Following the objection, defense counsel continued his questioning. Under continued questioning, John testified that he was "stoned" when Paul told him about shooting Reagles. He also testified that after his conversation with Paul, he smoked five or six additional marijuana cigarettes. John admitted being confused during the conversation and did not believe what Paul told him. He also admitted being confused when George came over with the news of Reagles' death, because Paul acted like he had no prior knowledge of it.

¶ 13. John also admitted telling police that Paul told him that there were two shots fired. He acknowledged lying for Paul when he told officers that Paul was at his home the day of the shooting.

¶ 14. After hearing testimony from John and another witness, Arthur Parramoure, who testified that Paul confessed to shooting Reagles, the case was bound

over for trial. Paul had new counsel at trial because the attorney representing him at the preliminary hearing, Mr. Sumpter, passed away.

¶ 15. Trial began on February 8, 1999. On the third day of trial, John took the witness stand and asserted his Fifth Amendment right against self-incrimination. He refused to answer questions, and persisted in the refusal despite the State's offer of use immunity for his testimony and the court's warning that he could be held in contempt of court. In response to questioning from the court, John acknowledged that he feared perjury charges. The court held John in contempt of court. The State then moved to have John's preliminary hearing testimony offered into evidence.

¶ 16. On February 11, 1999, after a motion hearing, the circuit court ruled that John's preliminary hearing testimony was inadmissible. The State immediately appealed. By order dated February 16, 1999, the court of appeals summarily affirmed the circuit court's ruling, finding that the State properly filed a notice of appeal under Wis. Stat. § 974.05(1)(d)2 (1997–98)[4] and that "an unusual circumstance" existed in the case such that the opportunity to cross-examine at the preliminary hearing was insufficient to satisfy the constitutional right to confrontation. The State then filed an emergency petition for review with this court, which we accepted. This court ordered the trial stayed, pending a decision by the court. Thus, in the middle of the trial, after a jury had been selected and jeopardy attached, everything in the case stopped to await an answer from the appellate courts on the issue of the admissibility of John's preliminary hearing testimony.

---

[4] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

¶ 17. The parties submitted briefs and this court held oral argument on February 23, 1999. The same day, following oral argument, this court issued an order reversing the decision of the court of appeals. That order provided, in full:

> On February 19, 1999, this court granted the emergency petition for review filed by the State of Wisconsin and also granted the State's request for a stay of the criminal trial that was currently in process in Kenosha County Circuit Court.
>
> The circuit court, Michael S. Fisher, Judge, declared John Stuart, the defendant's brother, an unavailable witness due to his invocation of his Fifth Amendment privilege against self-incrimination. John Stuart testified at the preliminary hearing that the defendant told him he shot the victim and sought John's assistance in creating a false alibi. The circuit court denied the state's motion to admit John Stuart's preliminary examination testimony as former testimony under § 908.045(1), Stats., on the grounds that John Stuart was not subject to effective cross-examination by defense counsel at the preliminary hearing.
>
> The State filed both a notice of appeal and a petition for leave to appeal. The court of appeals concluded that the notice of appeals was properly filed under § 974.05(1)(d)2, Stats., and it dismissed the petition for leave to appeal. The court of appeals summarily affirmed the circuit court's order denying the state's motion to admit John Stuart's preliminary hearing testimony under § 908.045(1), Stats.
>
> Having considered the parties' briefs and heard oral argument;
>
> IT IS ORDERED the court of appeals' order is reversed.

630

IT IS FURTHER ORDERED the stay of the criminal trial is lifted.

C.J. Abrahamson and JJ. Bablitch and Bradley dissent and would dismiss the petition as improvidently granted. In the alternative, JJ. Bablitch and Bradley would affirm.

*State v. Paul J. Stuart,* No. 99–0432–CR, unpublished order (Wis. Feb. 23, 1999).

¶ 18. Following this court's ruling, the murder trial resumed. Based on our reversal of the court of appeals' decision, the circuit court had John's preliminary hearing testimony read into the record. The defendant was subsequently convicted of first-degree intentional homicide in violation of Wis. Stat. § 940.01(1) (1989–90). He was sentenced to life imprisonment, with parole eligibility in the year 2029.

¶ 19. The defendant filed a motion for postconviction relief, which was denied. He appealed, and the court of appeals certified the case to this court, identifying two specific issues:

1. When an appellate court issues an opinion resolving a discretionary ruling of the circuit court, is its decision the law-of-the-case?

2. Whether an unpublished Wisconsin Supreme Court order reversing a decision of the court of appeals, without providing legal reasoning or legal authorities, establishes the law-of-the-case?

As we have previously noted, the defendant also raised a variety of other claims in his appeal, which the court of appeals specifically noted it did not "deem ... worthy of certification." This court accepted certification of all claims from the court of appeals on December 11, 2002.

631

## II. STANDARD OF REVIEW

¶ 20. As noted, this case centers around the admissibility of a witness's former testimony and the impact of this court's prior decision to reverse the court of appeals' decision which affirmed the circuit court's ruling to exclude the evidence. The issue of whether a decision establishes the law of the case raises a question of law that we review de novo. *See State v. Wurtz,* 141 Wis. 2d 795, 799, 416 N.W.2d 623 (Ct. App. 1987).

¶ 21. Generally, the admissibility of former testimony is a discretionary decision of the circuit court that will not be overturned unless clearly erroneous. *State v. Tomlinson,* 2002 WI 91, ¶ 39, 254 Wis. 2d 502, 648 N.W.2d 367 (citing *La Barge v. State,* 74 Wis. 2d 327, 246 N.W.2d 794 (1976)). However, the question of whether a defendant's right to confrontation has been violated is one of constitutional fact, subject to independent appellate review. *Id.* (citing *State v. Jackson,* 216 Wis. 2d 646, 655, 575 N.W.2d 475 (1998)); *see also State v. Williams,* 2002 WI 58, ¶ 69, 253 Wis. 2d 99, 644 N.W.2d 919. We will "adopt the circuit court's findings of historical fact, unless they are clearly erroneous, but we independently apply those facts to the constitutional standard." *Tomlinson,* 254 Wis. 2d 502, ¶ 39.

## III. DISCUSSION

¶ 22. Our first determination must be whether the prior decision of this court established the law of the case. As the court of appeals' certification questions make apparent, there are two arguments related to this issue. The defendant asserts that the circuit court should not have been bound by this court's ruling as the

law of the case because 1) this court's decision dealt with a discretionary decision rather than a rule of law; and 2) this court did not state any reasons.

¶ 23. The law of the case doctrine is a "longstanding rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal." *Univest Corp. v. General Split Corp.*, 148 Wis. 2d 29, 38, 435 N.W.2d 234 (1989) (internal citation omitted). Thus, a circuit court is generally bound to apply decisions made by the court of appeals or supreme court in a particular case. *See id.; see also Oladeinde v. City of Birmingham,* 230 F.3d 1275, 1288 (11th Cir. 2000) (noting that in the federal system, the law of the case doctrine binds district courts and appellate courts to prior appellate decisions in the same case). The purpose of the law of the case doctrine is not complex: "The doctrine of 'law of the case' is rooted in the concept that courts should generally follow earlier orders in the same case and should be reluctant to change decisions already made, because encouragement of change would create intolerable instability for the parties." *Ridgeway v. Montana High School Ass'n,* 858 F.2d 579, 587 (9th Cir. 1988) (internal citations omitted).

¶ 24. However, the rule is not absolute. In days past, Wisconsin rigidly followed the law of the case, refusing to touch issues previously determined, but that is no longer the case. *See State v. Brady,* 130 Wis. 2d 443, 447, 388 N.W.2d 151 (1986) (citing *McGovern v. Eckhart,* 200 Wis. 64, 227 N.W. 300 (1929), for the proposition that the tradition to strictly follow the law of the case doctrine was to be applied more flexibly in

the future).[5] As this court has found: "[T]he law of the case doctrine is not a rule to which this court is bound by any legislative enactment, nor is it a rule to be inexorably followed in every case." *Univest,* 148 Wis. 2d at 38–39. There are now certain circumstances, when " 'cogent, substantial, and proper reasons exist,' " under which a court may disregard the doctrine and reconsider prior rulings in a case. *Id.* (internal citations omitted). This court has found that a court should adhere to the law of the case "unless the evidence on a subsequent trial was substantially different, [or] controlling authority has since made a contrary decision of the law applicable to such issues." *Brady,* 130 Wis. 2d at 448 (brackets in original) (citing *White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir. 1967)). More broadly, this court has found that "It is within the power of the courts to disregard the rule of 'law of the case' in the interests of justice." *Id.* at 447 (internal quotations and citations omitted). The Supreme Court and other courts have stated similar reasons. *See Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 817 (1988) (citation omitted) (noting that a court should "be loathe" to reconsider previous decisions it or a coordinate court has rendered "in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice' "); *Oladeinde,* 230 F.3d at 1288 (allowing reconsideration if "new and substantially different evidence is produced, or there has been a change in

---

[5] *But see* Scott Doney, Note, *Law of the Case in Nevada: Confusing Relatives,* 2 Nev. L. J. 675, 677 (2002) (finding that Nevada still adheres to a strict law of the case doctrine wherein it lacks authority to revisit issues and "even if the prior ruling is erroneous, no longer sound, or might work a manifest injustice, the court refuses to reconsider the issue").

controlling authority" or if the prior decision "was clearly erroneous and would result in a manifest injustice"); *Alliance for Cannabis Therapeutics v. DEA,* 15 F.3d 1131, 1134 (D.C. Cir. 1994).

¶ 25. In *Christianson,* 486 U.S. at 817, the United States Supreme Court held that application of the law of the case doctrine "turns on whether a court previously 'decide[d] upon a rule of law' . . . not on whether, or how well, it explained the decision." Paul argues first that this court's prior ruling was a discretionary decision rather than a determination upon a rule of law, and as such, the law of the case doctrine cannot be applied to bind the circuit court. In support of his argument, the defendant cites to the *Wurtz* decision by the court of appeals.

¶ 26. In *Wurtz,* 141 Wis. 2d at 800, the court of appeals held that "when an appellate court affirms a discretionary ruling, its decision does not reflect the law of the case unless a question of law is resolved." The court went on to explain:

> We hold that the subsequent trial court on remand is not limited to the discretionary decisions made by the original court, but is bound only to apply the law determined by the appellate court in reaching a reasoned conclusion. Judicial discretion is by definition an exercise of proper judgment that could reasonably permit an opposite conclusion by another judge.

*Id. Wurtz* acknowledged that issues determined "as a matter of law" are binding upon the circuit court. *Id.*

¶ 27. We disagree with defendant's assertion that this court's decision did not involve resolution of a question of law. Although no reasons were stated in the

order, the issue before the court was defined and a decision made. As noted in *Wurtz,* an affirmance of a discretionary ruling may not require a court to determine a question of law. *See id.* However, we believe that a *reversal* such as the one in this case necessarily entails a determination on a rule of law, because to reverse the court we must find the circuit court's ruling outside the realm of discretion. *See* Donald Songer et al., *Nonpublication in the Eleventh Circuit: An Empirical Analysis,* 16 Fla. St. U. L. Rev. 963, 976 (1989) ("When a reversal occurs in a case, inevitably it involves a question of law, with the court addressing a legal mistake from below.").[6] The issue presented in that appeal was confined to a narrow legal issue defined by the court of appeals, namely, whether the limitation upon cross-examination—not allowing defense counsel to ask about the circumstances under which John Stuart gave one of his statements to police—constituted an "unusual circumstance," such that the constitutional right to confrontation would be violated and the preliminary hearing testimony inadmissible. The court of appeals determined that it did constitute an "unusual circumstance." In our order issued on February 23, 1999, we laid out the circumstances of the case and the findings by the circuit court and the court of appeals. By subsequently reversing the court of appeals, we at least implicitly found, as a matter of law, that the circum-

[6] Interestingly, the author of this article is arguing that courts need to give reasons for their decisions, because many cases of "precedential value are ending up in unpublished opinions." Songer et al., *Nonpublication in the Eleventh Circuit: An Empirical Analysis,* 16 Fla. St. U. L. Rev. 963, 976 (1989). We agree that in most cases it is appropriate to provide explicit explanations for decisions. The case at hand, however, was an exception necessitated by exigent circumstances.

stances presented were not "unusual" and should not operate to prevent admission of the preliminary hearing testimony. Because this decision was a reversal and inherently included determination of a "rule of law," we conclude that *Wurtz* is inapplicable.

¶ 28. As previously stated, the defendant also argues that this court's order reversing the court of appeals cannot establish the law of the case because it stated no reasons for the decision. This argument must also fail. There is nothing that requires this court to state its reasons. The United States Supreme Court has made clear that reasons are not necessary for the law of the case doctrine to apply. Again, as it stated in *Christianson*, 486 U.S. at 817: "That the Federal Circuit did not explicate its rationale is irrelevant, for the law of the case turns on whether a court previously 'decide[d] upon a rule of law' . . . *not on whether, or how well, it explained the decision.*" (Emphasis added.) Other courts have held similarly. *See, e.g., Al Tech Specialty Steel Corp. v. Allegheny Int'l Credit Corp.*, 104 F.3d 601, 605 (3d Cir. 1997) (noting that the "law of the case doctrine applies to this decision even though it was rendered by judgment order"). Further, although the court of appeals is required to include a written opinion with reasons for its decision, *see* Wis. Stat. § 752.41(1),[7] there is not an identical rule for the Wisconsin Supreme Court. The rule relevant to Wisconsin Supreme Court decisions, Wis. Stat. § 751.10, provides:

---

[7] Wisconsin Stat. § 752.41(1) provides: "In each case, the court of appeals shall provide a written opinion containing a written summary of the reasons for the decision made by the court."

637

**Decisions to be written; part of record; certification.** The supreme court shall decide all cases in writing. One copy of each written decision or opinion delivered by the court or a justice in an action or proceeding in the court shall remain in the office of the clerk of the supreme court and one copy shall constitute a part of the record in the action or proceeding and shall be certified to a court of the United States to which the action or proceeding is certified or removed.

Although this rule requires our decisions to be in writing, nothing in the rule mandates that we give reasons. *See Neely v. State,* 89 Wis. 2d 755, 758, 279 N.W.2d 255 (1979) ("The word decision, as used in the statutes and the rules, refers to the result (or disposition or mandate) reached by the court of appeals [or supreme court] in the case."). We certainly agree that it is generally good practice for courts to give reasons, but maintain that nothing requires the court to do so. Here, the emergency conditions precipitating this court's prior ruling, specifically that jeopardy had already attached and trial was underway when the matter was stayed for appellate review, and the narrow issue to be decided excuse the lack of any explicit rationale. This court accepted the case on February 19, 1999, heard oral argument on February 23, 1999, and issued a decision on February 23, 1999. Expediency was required because the trial was stayed until this court reached a decision.

¶ 29. We now turn to the final point of discussion, whether we should find an exception to the law of the case doctrine in this case, because there exist "cogent, substantial, or proper reasons" to put aside its application, such as substantially different evidence, new case law, or some sort of miscarriage of justice stemming

from our prior ruling. We find that no such circumstances exist. Nothing in this case has changed. In fact, the defendant's primary focus in arguing that this court should not apply the law of the case doctrine is that this court simply erred in making its determination the first time. In abandoning a rigid application of the law of the case doctrine, this court has held that we will "not deny to litigants or ourselves the right and duty of correcting an error merely because of what we may be later convinced was merely our ipse dixit in a prior ruling in the same case." *McGovern*, 200 Wis. at 77. Thus, we will review the merits of the defendant's confrontation claim to determine if, as the United States Supreme Court has described, " 'extraordinary circumstances' [exist] such as where the initial decision was 'clearly erroneous and would work a manifest injustice.' " *Christianson*, 486 U.S. at 817 (internal citation omitted).

■

¶ 30. Paul argues that his brother's preliminary hearing testimony should not have been admitted into evidence because he was not allowed adequate opportunity to cross-examine the witness at the preliminary hearing. We find, as we did in our previous ruling in this case, that John's preliminary hearing testimony should have been, and properly was, admitted into evidence.

¶ 31. John asserted his Fifth Amendment privilege during Paul's trial and refused to answer questions posed by the State. The State offered him use immunity for his testimony, but John persisted in asserting his rights and would not testify regarding the charges against Paul. The court eventually held John in contempt of court. The State then moved to have John's preliminary hearing testimony read into evidence.

¶ 32. Paul claims that admission of John's former testimony would violate his constitutional right to confrontation, as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 7 of the Wisconsin Constitution. The Sixth Amendment confrontation clause of the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Similarly, Article I, Section 7 of the Wisconsin Constitution provides: "In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face." In *State v. Bauer*, 109 Wis. 2d 204, 325 N.W.2d 857 (1982), this court held that the purpose of the confrontation clause "is to ensure that the trier of fact has a satisfactory basis for evaluating the truthfulness of evidence admitted in a criminal case." Although the rule is very important, we have recognized that it is not absolute. *Id.* at 208. Were it to be held absolute, virtually all evidence admissible under a hearsay exception would violate the confrontation clause. *Id.* at 209. Thus, a balance must be made, weighing the admission of evidence against the defendant's right to confrontation.

¶ 33. In *Bauer*, 109 Wis. 2d 204, this court established a test for determining when hearsay evidence is admissible without violating a defendant's constitutional right to confrontation. We explained:·

> The threshold question is whether the evidence fits within a recognized hearsay exception. If not, the evidence must be excluded. If so, the confrontation clause must be considered. There are two requisites to satisfaction of the confrontation right. First, the witness must be unavailable. Second, the evidence must bear some indicia of reliability. If the evidence fits

within a firmly rooted hearsay exception, reliability can be inferred and the evidence is generally admissible. This inference of reliability does not, however, make the evidence admissible per se. The trial court must still examine the case to determine whether there are unusual circumstances, which may warrant exclusion of the evidence. If the evidence does not fall within a firmly rooted hearsay exception, it can be admitted only upon a showing of particularized guarantees of trustworthiness.

*Id.* at 215. We have since applied this test on several occasions. *See, e.g., State v. Norman,* 2003 WI 72, 262 Wis. 2d 506, 664 N.W.2d 97; *Tomlinson,* 254 Wis. 2d at ¶¶ 39–52.

¶ 34. As described above, the first step of the analysis is to determine whether the evidence fits within a recognized hearsay exception. Former testimony, such as John's preliminary hearing testimony, falls under Wis. Stat. § 908.045, which provides:

**Hearsay exceptions; declarant unavailable.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) FORMER TESTIMONY. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of another proceeding, at the instance of or against a party with an opportunity to develop the testimony by direct, cross-, or redirect examination, with motive and interest similar to those of the party against whom now offered.

Paul does not dispute that this is a recognized hearsay exception. There is also no dispute in this case that the witness is, indeed, unavailable as defined in Wis. Stat. § 908.04(1)(b), because he asserted his Fifth Amend-

ment rights, refusing to answer questions even after being offered use immunity and being warned that he could be held in contempt.

¶ 35. The question that remains is whether John's preliminary hearing testimony meets the requirements of Wis. Stat. § 908.045. *See Tomlinson,* 254 Wis. 2d 502, ¶ 45. We believe that it does. The testimony was given at a preliminary hearing in which the defendant was given an opportunity to develop the testimony by "direct, cross-, or redirect examination" as required by § 908.045. Although the scope of the cross-examination was somewhat limited by the scope of preliminary hearings, Paul was able to challenge the witness's veracity on cross-examination. Indeed, only one objection was sustained during the cross-examination. Additionally, testimony relating to credibility came up during the direct examination of John as well. On direct examination, John admitted participating in a burglary. On cross-examination, John admitted drug use, confusion while talking to Paul about Paul's possible involvement in the shooting, and the fact that he lied to police. We find that the questioning was sufficient to satisfy the requirements of § 908.045. We will discuss the testimony and the extent of cross-examination more fully in looking at whether the requirements of the confrontation clause have been satisfied.

¶ 36. Having found that John's preliminary hearing testimony is admissible under § 908.045, we now turn to examination of the confrontation clause. As noted, *Bauer,* 109 Wis. 2d at 215, states that there are two requisites for satisfying the confrontation clause: 1) the witness must be unavailable; and 2) the evidence must "bear some indicia of reliability." The parties have agreed that the witness is unavailable.

According to *Bauer*, reliability can be inferred if the evidence fits within a "firmly rooted" hearsay exception. *Id.* This court then went on to find that the United States Supreme Court recognized in *Ohio v. Roberts,* 448 U.S. 56 (1980), that preliminary hearing testimony does fall into a "firmly rooted" hearsay exception. *Bauer* at 216.

¶ 37. Such a finding does not, however, end the analysis. As *Bauer* noted, the inference of reliability does not mean the evidence is admissible per se. *Id.* at 215. Rather, we examine the case to determine if any unusual circumstances exist that would undermine the inference of reliability and warrant exclusion of the evidence. *Id.* This particular portion of the analysis has been the heart of the defendant's argument relating to alleged violation of the confrontation clause since the admissibility was first contested and appealed to this court in 1999. We now find, as we did then, that no unusual circumstances exist here that require exclusion of John's preliminary hearing testimony.

¶ 38. Paul argues that because he was not allowed to ask the circumstances under which John made his June statement to police, his constitutional right to confrontation was violated. As noted, this question by defense counsel, regarding the circumstances of John's June statement, drew the only objection during cross-examination. The court ruled that the question related to credibility and discovery and was beyond the scope of testimony allowed at a preliminary hearing and was, therefore, not allowed.

¶ 39. The defendant's argument here is not a new one. Numerous defendants have complained of a limited opportunity to cross-examine. *See, e.g., Ohio v. Roberts,* 448 U.S. at 68–72; *Bauer*, 109 Wis. 2d at 216.

We acknowledge that preliminary hearings are not the same as full trials, because cross-examination at a preliminary hearing is limited to the issue of probable cause. *See Bauer,* 109 Wis. 2d at 217. There have been cases where preliminary hearing testimony has been excluded on the basis of "unusual circumstances." For example, in *People v. Brock,* 695 P.2d 209, 219–20 (Cal. 1985), the Supreme Court of California excluded the preliminary hearing testimony of a witness because the witness's serious illness greatly limited the defense's ability to cross-examine her and test her recollection of relevant events. In *Pointer v. Texas,* 380 U.S. 400 (1965), the United States Supreme Court held that preliminary hearing testimony must be excluded where the defendant was not represented by counsel at the proceeding. Nonetheless, this court has found that limitation of cross-examination due to the scope of preliminary hearings does not render evidence inadmissible. *Bauer,* 109 Wis. 2d at 218. We have stated that " '[i]n upholding the introduction of an unavailable witness' preliminary hearing testimony, the Supreme Court has never said that the opportunity for cross-examination afforded at the preliminary hearing must be identical with that required at trial.' " *Id.* (quoting *United States ex rel. Haywood v. Wolff,* 658 F.2d 455, 461 (7th Cir. 1981), cert. denied, 454 U.S. 1088 (1981)).

¶ 40. In *Bauer,* we noted that the procedural circumstances of the preliminary hearing are indicative of whether or not there is a basis for upholding the inference of reliability. *Id.* at 219. Citing *Roberts,* 448 U.S. at 73, and *California v. Green,* 399 U.S. 149, 165 (1970), two cases by the United States Supreme Court, we noted several circumstances as important: 1) the witness was under oath at the preliminary examination; 2) the witness was subject to cross-examination; 3)

the proceedings were conducted before a judicial tribunal; and 4) the proceedings were recorded. *Bauer,* 109 Wis. 2d at 219. We then found: "These accoutrements of the preliminary examination provide an assurance of trustworthiness." *Id.*

¶ 41. This court examined a very similar set of circumstances in *Tomlinson,* 254 Wis. 2d 502, ¶¶ 46–52. In finding that admission of the evidence did not violate the defendant's confrontation rights, we again focused on the circumstances at the preliminary hearing:

> Coleman's testimony was given under oath, before a judicial tribunal, and in a setting equipped to make a judicial record. Tomlinson was already represented by counsel at the preliminary hearing—the same attorney who later represented Tomlinson at trial. Additionally, Tomlinson's defense counsel had an opportunity to cross-examine Coleman at· the preliminary hearing. During the cross-examination, the defense attorney was able to elicit information helpful to Tomlinson's defense, including the fact that Coleman did not call the police after the incident, that Coleman did not see whether Tomlinson struck Phillips a third time because he had been leaving the scene at the time, and that Coleman had been drinking on the day of the incident. Thus, we find Tomlinson's ability to cross-examine Coleman was meaningful.

*Id.,* ¶ 51. Though Tomlinson's right to cross-examine the relevant witness was limited by the preliminary hearing context, we found that the cross-examination that occurred was sufficient for purposes of the confrontation clause. *Id.* The same is true here. As we have noted, there was only one objection made during the · cross-examination. This objection stopped the defendant from asking about the circumstances under which John made a statement to police in June 1998. We

acknowledge that unlike some cases, John's credibility is an important issue in the case. However, John's testimony at the preliminary hearing and the circumstances surrounding it were sufficient to satisfy the requirement that there be indicia of reliability. First, John's testimony was taken under oath. Paul was represented by counsel at the hearing. He had different counsel at trial, but both this court and the United States Supreme Court have found that this is a meaningless distinction. *See Roberts,* 448 U.S. 56, 72; *Bauer,* 109 Wis. 2d at 219 n.10. Defense counsel was able to meaningfully cross-examine John. He directly challenged the substance of John's statements. For example, he got John to admit that he was under the influence of drugs at the time Paul allegedly confessed to him. He admitted that he was a drug user and that on the morning Paul confessed to shooting Reagles, he was confused and smoked additional marijuana after talking to Paul. Defense counsel was able to point out inconsistencies in John's version of the facts. John stated that Paul told him the gun was fired twice. Reagles was shot only once. Defense counsel also got John to admit that he lied to police. These questions are sufficient to give the jury a basis from which to determine John's reliability. Additionally, on direct examination, John admitted to participating in a burglary, and stealing coins, pocketknives, and several guns. Based on the circumstances of the preliminary hearing, we are satisfied that the requirement of indicia of reliability is satisfied, and that there are no unusual circumstances here warranting exclusion of the evidence and reversal of our original decision in this case.

¶ 42. Having resolved the law of the case questions, we remand all other issues raised by the defendant back to the court of appeals for consideration consistent with this opinion.

¶ 43. Because we find that our original decision necessarily included a determination on a rule of law and further, that we were not required to provide reasons for our decision, we find our prior ruling, requiring the circuit court to admit the preliminary hearing testimony of an unavailable witness, established the law of this case. In addition, we find that there are no circumstances here that merit us finding an exception to the law of the case doctrine. For these reasons, we affirm the ruling of the circuit court.

*By the Court.*—The judgment of the circuit court is affirmed and all remaining issues are remanded to the court of appeals for further proceedings consistent with this opinion.

¶ 44. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring in part, dissenting in part).* I agree with the court's disposition of the issues reached in the opinion. I write to comment on two other aspects of the majority opinion.

¶ 45. First, I would not remand the remaining issues to the court of appeals for decision. These issues were presented and briefed to this court. This court should decide them.

¶ 46. Second, on reflection I believe that this court should have given a reason for our previous ruling, even in an emergency situation. We shall have to try harder in the future.

## I

¶ 47. This case is here on certification from the court of appeals. When this court takes jurisdiction over an appeal upon certification from the court of appeals, the court takes jurisdiction of the entire appeal.[1] The court of appeals does not certify, and this court does not take jurisdiction over, discrete legal questions within the appeal.[2]

¶ 48. Although I believe this court has the power to remand issues to the court of appeals, I would have this court decide the entire appeal in this case in the interest of judicial economy, speedy resolution of appeals, reduced costs to the litigants, and finality of decisions. Remand is a wasteful duplication of decisional effort, even when, as in this case, the court of appeals did not consider the issues being remanded as worthy of certification.[3]

¶ 49. We are familiar with the parties' arguments. We are familiar with the record. Having decided several issues puts us in a better position than the court of appeals to decide the remaining issues with minimum

---

[1] Majority op., ¶ 19.

[2] *See* Wis. Stat. § (Rule) 809.61.

[3] *See Crown Life Ins. Co. v. LaBonte,* 111 Wis. 2d 26, 45, 330 N.W.2d 201 (1983) (Abrahamson, J., concurring and dissenting).

delay and maximum efficiency.[4] No reason exists why we could not render a decision on the remaining issues today.

¶ 50. Our remand to the court of appeals will delay the final decision on these issues. The court of appeals will have to go over the briefs and the record we have already laboriously reviewed, and the losing party on the remaining issues in the court of appeals may seek further review in this court, causing additional delay. Should we accept that party's petition for review, we will find ourselves, years later, where we are today.

---

[4] The question whether this court should decide all issues or remand some to the court of appeals arises in certifications, like this case, or in cases before us on petition for review. In the latter type of case the court of appeals may have decided only the determinative issues and may not have addressed the other issues raised on appeal. If this court reverses the court of appeals on the determinative issues, the parties are entitled to appellate review on the remaining issues. Sometimes this court decides these remaining issues if briefed and other times we remand them to the court of appeals. *See, e.g., State v. Sarabia,* 118 Wis. 2d 655, 674, 348 N.W.2d 527 (1984) (Abrahamson, J., concurring and dissenting); *Soquet v. Soquet,* 117 Wis. 2d 553, 561, 345 N.W.2d 401 (1984) (Abrahamson, J., concurring); *Shopper Advertiser, Inc. v. DOR,* 117 Wis. 2d 223, 240, 344 N.W.2d 115 (1984) (Abrahamson, J., concurring and dissenting); *Radtke v. City of Milwaukee,* 116 Wis. 2d 550, 558, 342 N.W.2d 435 (1984) (Abrahamson, J., concurring and dissenting); *La-Bonte,* 111 Wis. 2d at 45 (Abrahamson, J., concurring and dissenting).

II

¶ 51. I agree with the majority opinion that it is good practice for courts to give reasons for their decisions.[5] I have written previously urging the court to explain its decisions. On reflection I think we (myself included) erred in failing to explain our prior order in the present case.

¶ 52. In deciding legal issues this court owes litigants and the public an explanation for its rulings. A statement of explanation is essential to the judicial decision making process; it is of benefit to judges, litigants, and the public.

> When reasons are announced and can be weighed, the public can have assurance that the correcting process is working. Announcing reasons can also provide public understanding of how the numerous decisions of the system are integrated. In a busy court, the reasons are an essential demonstration that the court did in fact fix its mind on the case at hand. An unreasoned decision has very little claim to acceptance by the defeated party, and is difficult or impossible to accept as an act reflecting systematic application of legal principles. Moreover, the necessity of stating reasons not infrequently changes the results by forcing the judges to come to grips with nettlesome facts or issues which their normal instincts would otherwise cause them to avoid.

Paul D. Carrington et al., *Justice on Appeal,* 10 (1976).

¶ 53. Ironically, this court commits the same mistake of failing to explain its rulings today. The court remands issues to the court of appeals instead of deciding them itself, without any explanation. In some

---

[5] Majority op., ¶ 28.

cases in the past, we have decided all the issues.[6] In other cases in the past, we have remanded issues to the court of appeals.[7] The court has not explained the reason for remand or no remand.[8] Because counsel are unable to predict whether this court will decide issues or remand them to the court of appeals, they are uncertain whether to raise and brief all issues in this court or just request a remand.

¶ 54. For these reasons, I write separately.

¶ 55. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

---

[6] *See, e.g., Sarabia,* 118 Wis. 2d at 666.

[7] *See, e.g., State v. Marshall,* 113 Wis. 2d 643, 656, 335 N.W.2d 612 (1983); *State v. McConnohie,* 113 Wis. 2d 362, 375, 334 N.W.2d 903 (1983); *State v. Derenne,* 102 Wis. 2d 38, 48, 306 N.W.2d 12 (1981).

[8] For my explanation of why a remand of issues was appropriate in a particular case, *see Soquet,* 117 Wis. 2d at 561 (Abrahamson, J., concurring).