**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 27, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP101**

STATE OF WISCONSIN

Cir. Ct. No. 2019CV637

IN COURT OF APPEALS
DISTRICT II

JEAN DETJEN AND JENNIFER VIOLA,

    PLAINTIFFS-RESPONDENTS,

KIERNAN A. ROZUM,

    INVOLUNTARY-PLAINTIFF,

  V.

LIZABETH D. ROZUM,

    DEFENDANT-APPELLANT,

RICH LAMM,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Winnebago County: BARBARA H. KEY, Judge. *Affirmed.*

Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Lizabeth D. Rozum appeals an order, removing her as trustee of her mother's trust, invalidating her mother's power of attorney and IRA beneficiary designation on the basis of undue influence, ordering payment of various fees, and requiring Lizabeth to reimburse the trust and her mother's personal accounts certain amounts.  Lizabeth raises numerous arguments regarding the circuit court's purported errors throughout the pendency of this action.  We reject Lizabeth's arguments and affirm.

## BACKGROUND

¶2      As relevant to this appeal, Kiernan and Thomas Rozum lived in Winnebago County, Wisconsin and had three daughters:  Jean Detjen, Lizabeth, and Jennifer Viola.  Thomas died in 2015.  Following Thomas's death, Kiernan, who has some form of dementia, made Lizabeth her power of attorney ("POA").  She also established a trust and made Lizabeth a co-trustee along with Richard Lamm (an unrelated third party).  Kiernan was the primary beneficiary of the trust; her daughters received annual gifts from the trust.  The terms of the trust allowed the co-trustees to act jointly or independently.

¶3      During her time as POA and trustee, Lizabeth charged the trust $750 per month as co-trustee, $1,000 per month as POA, and $2,500 per month as Kiernan's caregiver.[1]  Lizabeth charged those fees despite the fact that Kiernan

---

[1]  Lizabeth reduced her fees by $800 per month when she moved out of state.

lived independently and the trust retained separate financial entities for investing and bill paying. Lizabeth also received property and land located on the Pine River in Waushara County from Kiernan.

¶4 Lamm testified his relationship with Lizabeth deteriorated approximately six months after he became co-trustee. Lizabeth demanded that Lamm stop talking to Kiernan and do no further work on the trust. Lamm gave notice that he wanted to resign as co-trustee but ultimately did not because Kiernan asked him to remain.

¶5 In May 2019, Detjen had a conversation with Kiernan about Lizabeth's actions as co-trustee and POA in relation to Kiernan's assets. In response, Kiernan called her attorney, Jillayne Verich. Verich testified Kiernan was upset. Kiernan wanted her daughters to receive an equal inheritance and was distressed to learn that there was nothing in place to equalize Lizabeth's advance receipt of certain property. Kiernan felt that Lizabeth was keeping information from her and wanted "to revoke [Lizabeth's] powers on her behalf."

¶6 On May 23, 2019, Verich met privately with Kiernan. Verich explained she had several meetings with Kiernan over the past year and at the May 23 meeting Kiernan "was the sharpest I'd ever seen her." Kiernan told Verich that "she no longer wanted Liz involved as an agent in any regard whether it's health care, caregiver, Financial Power of Attorney, Trustee. She didn't trust Liz." Kiernan wanted Detjen appointed as an interim financial POA, but ultimately wanted "an independent, nonfamily member serving in the financial situation whether it was POA or trustee." Verich prepared and Kiernan executed a document making Detjen POA.

¶7 Kiernan wrote Lizabeth, who lived in Arizona, a letter asking her to resign as co-trustee and advising Lizabeth she no longer wanted her in charge of her money or health. Kiernan advised Lizabeth that she had betrayed Kiernan's trust and felt that Lizabeth had "controlled" her since Thomas's death. Verich wrote Lizabeth and advised her that "your compensation will be adjusted as of June 1, 2019 to reflect that you no longer are serving as financial agent and healthcare agent. This will again be adjusted to $0 when you are no longer serving as trustee."

¶8 As for Kiernan's concern with equalization between her daughters, Kiernan valued the property Lizabeth had received at approximately one million dollars. Kiernan made Detjen and Viola the sole beneficiaries of a two-million-dollar IRA.

¶9 In response to the changes, Lizabeth traveled unannounced from Arizona to Kiernan's house in Oshkosh. In early June, Verich arrived at Kiernan's for a scheduled meeting and walked in on Lizabeth "berating her mother" while Kiernan sat "on the couch cowering … like an abused animal or abused child." Verich asked Lizabeth to leave and Lizabeth left and returned to Arizona.

¶10 On June 19, Kiernan reported to Verich that Lizabeth was flying in later that night and Kiernan was allowing Lizabeth to stay with her because Lizabeth was in some kind of unspecified trouble. Verich testified that when she left the June 19 meeting, given her prior dealings with Lizabeth, she knew it would be the last time she would see Kiernan.

¶11 A couple of days later, Kiernan fired Verich. Attorney David Schultz testified that on June 24, he received a call from Lizabeth and met with Lizabeth and Kiernan the next day. On June 26, Kiernan signed a POA drafted by

Schultz that reinstated Lizabeth as POA. Kiernan also executed a new IRA beneficiary form that reversed what had been done to equalize asset distribution.

¶12 On July 10, 2019, Lizabeth packed her mother a suitcase and drove her to Arizona. Kiernan never returned to Wisconsin. On August 1, Lizabeth moved Kiernan into a senior-living facility in Arizona.

¶13 On July 30, 2019, Detjen, Viola, and Kiernan, by Detjen as Kiernan's POA, brought suit against Lizabeth individually and in her capacity as co-trustee and against Lamm in his capacity as co-trustee. The complaint generally alleged that Lizabeth, as co-trustee, breached fiduciary duties to the trust beneficiaries in various ways and sought an accounting and reimbursement from Lizabeth for misconduct as well as Lizabeth's removal as co-trustee in favor of Lamm as sole trustee or another independent third-party. The complaint sought a declaratory judgment that the June POA Kiernan executed that reinstated Lizabeth as POA was the product of undue influence and void. The complaint also alleged Lizabeth had violated duties owed to Kiernan while Lizabeth was Kiernan's POA and sought an accounting of Lizabeth's conduct and the appointment of a third-party financial POA.

¶14 After the lawsuit against Lizabeth was filed, an attorney representing Kiernan moved to dismiss Kiernan from the lawsuit on the basis that she did not wish to participate. The circuit court granted Kiernan's motion the next day and dismissed her from the lawsuit. Once Kiernan was dismissed from the lawsuit, Lizabeth filed a motion to dismiss the lawsuit in its entirety.

¶15 Detjen and Viola requested judicial substitution and the case was reassigned. Detjen and Viola then filed a motion for reconsideration of the order dismissing Kiernan from the lawsuit. They argued they never had a chance to

respond to the dismissal motion before it was granted, one of the critical issues in their complaint was that Lizabeth was exerting undue influence on Kiernan, and their complaint contained factual allegations demonstrating undue influence. Kiernan, through her attorney, and Lizabeth opposed the motion.

¶16    At the motion hearing, the newly-assigned circuit court explained it appeared the dismissal motion was never decided on the merits. The court advised the parties that it called the previous judge to confirm the motion was not decided on the merits and the previous judge agreed. The circuit court explained that because the motion was disputed, it would reconsider the order dismissing Kiernan from the lawsuit and would hear the dismissal motion on the merits. Following arguments on the merits, the circuit court inquired whether, given the allegations of undue influence, any party objected to a guardian ad litem ("GAL") being appointed for Kiernan. Lizabeth advised she "wouldn't oppose a GAL being appointed if [Kiernan's] brought in as a party[.]" The circuit court then denied the dismissal motion, explaining that because the issues in the case related to the validity of Kiernan's POA, Kiernan would remain a party to the action.[2] The court also appointed a GAL for Kiernan.

¶17    Lizabeth answered the complaint and filed cross-claims against her sisters for conspiracy, racketeering, punitive damages, intentional interference with contractual relations, and intentional infliction of emotional distress. Lizabeth also petitioned the court to determine Lamm had resigned as trustee, remove Lamm as co-trustee, and deny him trustee compensation.

---

[2] Eventually, the court made Kiernan an involuntary plaintiff.

¶18    In June 2020, following motions, affidavits, and arguments, the circuit court temporarily suspended Lizabeth as co-trustee and granted Lamm's request to be removed as co-trustee. The court temporarily appointed Corporate Guardians of Northeast Wisconsin ("CGNW") as trustee. Because the court had not yet determined whether Detjen or Lizabeth was Kiernan's POA, the circuit court also temporarily appointed CGNW as Kiernan's POA. The court reasoned that it was "necessary for the Court to use its authority for equitable purposes and preserve the estate of Kiernan Rozum until such time this case can be fully litigated."

¶19    In November 2020, the court held a two-day evidentiary hearing on the allegations of undue influence, which included the request to remove Lizabeth as a trustee and the determination of which POA designation controlled. Following testimony and evidence, the circuit court first determined it had jurisdiction over this case because Kiernan was a Wisconsin resident when the complaint was filed. The court found that Lizabeth's actions of taking Kiernan to Arizona did not establish Kiernan, who had lived in Wisconsin her entire adult life, was an Arizona resident when the complaint was filed.

¶20    The circuit court then found that given Kiernan's cognitive decline, Kiernan was susceptible to undue influence and Lizabeth exhibited "incredibly controlling behavior" to get what she wanted. The court noted the "statements from Kiernan in terms of her being scared and doing what [Lizabeth] wants." The court found Lizabeth wanted to be in control and there was a financial incentive for her to be in control. The court found that Lizabeth "became aware of this change in the designation of Trustee, Power of Attorney and she came to Wisconsin to address this and to address it by getting it all changed back and moving [Kiernan] down to Arizona." The court found Lizabeth's testimony "to be

self-serving, evasive, selective memory, some real concerns with regard to Lizabeth's testimony and the actions in terms of how she dealt with the people involved here." The court observed there was "a significant amount of testimony of significant difficulties dealing with Lizabeth when things aren't going the way she wants them to go."

¶21 The circuit court then removed Lizabeth as trustee. The court found that Lizabeth breached her fiduciary duties as trustee and that Lizabeth's actions had substantially impaired the administration of the trust. The court emphasized, "Again, this isn't just one person testifying. It was multiple people testifying to that." The court ordered an accounting of the trust assets and disbursements, concluding:

> [T]he Court cannot begin to understand what's happened to the principal of this Trust and who knows what's in the individual accounts now. So much money has been spent on things that were not in Kiernan's best interests here. There's no doubt about that.

The court appointed CGNW as permanent trustee.

¶22 As for the POA designation, the circuit court found Kiernan's May POA, naming Detjen as POA was valid, and Kiernan's June POA, reinstating Lizabeth as POA was invalid because it was the result of undue influence. The court ordered Lizabeth to provide an accounting of payments or disbursements made from Kiernan's personal accounts. Because Detjen believed it was in Kiernan's best interests to have a third-party serve as Kiernan's financial POA, the court appointed CGNW as Kiernan's financial POA.

¶23     The circuit court then dismissed Lizabeth's cross claims against her sisters.  It scheduled a second evidentiary hearing to determine the issues regarding the IRA beneficiary designations and damages, including attorney fees.

¶24     Leading up to the second evidentiary hearing, the circuit court issued an order requiring all parties and witnesses to appear in person.  The court explained, in part, that during the first evidentiary hearing, Lizabeth, who appeared virtually, had at one point appeared to be speaking to someone off camera.  When the court inquired, Lizabeth advised the court no one else was present.  However, in Lizabeth's post-hearing filings, she advised the court that indeed there was another individual present with her during the hearing, taking notes and recording testimony.  As a result, the court prohibited virtual appearances at the second evidentiary hearing.

¶25     Following the circuit court's order, Lizabeth moved the court to permit her to appear virtually.  The court denied her request.  Lizabeth then wrote to the court, advising the court, among other things, that she "will not be in court on November 23, 2021," which was the day of the second evidentiary hearing.  Lizabeth also moved the court to reconsider and permit her to appear virtually. The court denied Lizabeth's reconsideration motion.

¶26     Lizabeth did not appear at the November 23, 2021 hearing.  Despite her nonappearance, the circuit court proceeded with the second evidentiary hearing as scheduled.  Based on the testimony and exhibits from the hearing, the circuit court first found that Kiernan wanted to treat her daughters equally; that Lizabeth had received an advance in the form of certain property; that Kiernan offset that advance by making Detjen and Viola the beneficiaries of an IRA; and that Lizabeth unwound that equalization through undue influence.  The court

9

ordered Kiernan's POA to reestablish Detjen and Viola as beneficiaries of Kiernan's IRA in order to equalize Lizabeth's early inheritance.

¶27    The court then made a series of findings and orders regarding costs and fees, including attorney fees.  The court ordered the trust to pay Lamm for fees that were incurred while he was trustee and dismissed Lizabeth's cross claims against Lamm based on her nonappearance.  The court also determined whether other costs and fees, including certain attorney fees, were reasonable and depending on the specific claim ordered the trust or Kiernan to pay each approved amount.  The court then ordered Lizabeth to reimburse the trust and/or Kiernan for certain amounts that were attributable to breaches of Lizabeth's fiduciary duties and/or caused by Lizabeth's behavior during the pendency of this action.[3]

¶28    Lizabeth moved for relief from the court's order on the basis that she was hospitalized and therefore could not attend the November 23 hearing.  The circuit court denied her motion.  Lizabeth appeals.

---

[3] The circuit court explained that "Lizabeth's actions have made [this case] so much more time consuming and costly than it would have otherwise been."  The court continued:

> the innumerable filings as well as again the testimony at the original trial on this, including the affidavits from counsel on motions to withdraw by all counsel that have represented Lizabeth, that there has been a consistent pattern of obstructive behavior to the entire administration of the Court and counsel with regard to this matter[.]

10

**DISCUSSION**

¶29     Lizabeth raises numerous arguments on appeal regarding various ways the circuit court erred throughout the pendency of the case. We address each argument in turn, including additional facts as necessary.[4]

**I.      Kiernan's dismissal from the lawsuit**

¶30     On appeal, Lizabeth first argues the circuit court erred by granting the motion to reconsider the order dismissing Kiernan from the lawsuit. She contends the dismissal order was the "law of the case" and "[n]o reason was stated on the record to sidestep the law of the case doctrine."

¶31     The law of the case doctrine does not apply in this case. The circuit court's initial grant of the motion to dismiss was not a decision on a legal issue by an appellate court. *See* ***State v. Stuart***, 2003 WI 73, ¶23, 262 Wis. 2d 620, 664 N.W.2d 82 ("The law of the case doctrine is a 'longstanding rule that a decision on a legal issue *by an appellate court* establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal.'" (Emphasis added)).

¶32     More importantly, and contrary to Lizabeth's argument, the circuit court *did* explain why it was granting the reconsideration motion. It stated it was granting the reconsideration motion because after reviewing the record the dismissal motion was never decided on the merits, and, accordingly, the circuit court would consider the motion on the merits. The circuit court did not err.

---

[4] To the extent we have not addressed an argument on appeal, the argument is deemed rejected. *See* ***State v. Waste Mgmt. of Wis., Inc.***, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978).

¶33     Lizabeth next asserts the circuit court erred by granting the motion for reconsideration because the court engaged in an improper independent investigation when the court advised the parties that it had contacted the former judge to confirm that the dismissal motion had never been decided on the merits. Lizabeth argues the circuit court's decision to grant the reconsideration motion was "tainted by that independent investigation." We disagree. It is clear from the record that the circuit court would have granted the reconsideration motion even without confirmation from the former judge.

## II.     Appointment of Kiernan's GAL

¶34     Lizabeth next argues the circuit court erred by appointing a GAL for Kiernan. However, Lizabeth stipulated to the appointment of a GAL. Any argument regarding the appointment of a GAL is therefore forfeited. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 (timely objection in the circuit court is required to preserve an argument for appeal).

¶35     Lizabeth also contends the circuit court erred by appointing Attorney Kathleen Healy to serve as GAL instead of the attorney Kiernan retained to dismiss herself from the lawsuit. In support, she relies on WIS. STAT. § 803.01(3)(a),[5] which provides, in relevant part, that "if the interests of the … individual alleged to be … incompetent are represented by an attorney of record, the court shall, except upon good cause stated in the record, appoint that attorney as the guardian ad litem."

---

[5] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶36    However, after stipulating to the appointment of a GAL, no one objected to the court's appointment of Healy as GAL, including the attorney Kiernan retained to dismiss herself from the lawsuit.  Lizabeth's argument regarding which attorney was appointed as GAL for Kiernan is forfeited.  *See Huebner*, 235 Wis. 2d 486, ¶10.  In any event, Lizabeth overlooks that the role of a GAL is to do what is in the person's best interest, not necessarily advocate for what the person wants.  When Healy was appointed as GAL, there was an evident conflict of interest between how Kiernan wished to handle the lawsuit, which Detjen and Viola argued was made while she was "under Lizabeth's control," and how others believed Kiernan's best interests would be served.  Good cause existed for the circuit court to appoint Healy as GAL.

### III.    Kiernan's status as a Wisconsin resident

¶37    Lizabeth next argues the circuit court lacked jurisdiction over the case because Kiernan was an Arizona resident when the complaint was filed.  She also contends the circuit court's factual finding regarding Kiernan's residency was insufficient because the court only determined Kiernan was a resident of Wisconsin and did not specifically find Kiernan was a resident of Winnebago County.

¶38    We disagree.  First, the undisputed record from the first evidentiary hearing established that Kiernan lived in "Evergreen Retirement Community in Oshkosh, Wisconsin."  Oshkosh is in Winnebago County.  *See* WISCONSIN BLUE BOOK 525 (2021-2022).  As to Kiernan's residency, the court concluded Kiernan was a resident of Wisconsin when the July 30, 2019 complaint was filed, explaining:

13

> [Kiernan] had been taken from the place she lived all her life, driven down [to Arizona] and it wasn't until sometime in August that her items all arrived there. Gone there with the original expectation of a vacation and then the original expectation, well, we'll see what you think of this. But, no, she didn't move [to Arizona] on the day that she just left Evergreen with [Lizabeth].

The court's factual determination is supported by the record and therefore not clearly erroneous. *See **Royster-Clark, Inc. v. Olsen's Mill, Inc.***, 2006 WI 46, ¶11, 290 Wis. 2d 264, 714 N.W.2d 530 (appellate court "defers to the circuit court's findings of fact unless they are unsupported by the record").

## IV.    Order appointing a temporary trustee and POA

¶39    Lizabeth argues the circuit court erred when it issued a pretrial order that "temporarily suspended" Lizabeth from her role as trustee and temporarily appointed CGNW as trustee and as Kiernan's POA. Lizabeth asserts the motions and affidavits revealed "sharp differences in the facts" and the circuit court erred by failing to hold an evidentiary hearing before issuing its temporary order. Lizabeth also argues the circuit court had no authority to appoint a temporary POA. She argues that the court's order for a temporary POA effectively removed her as her mother's POA and the court was required to review her conduct before making such a determination. She also challenges the appointment of CGNW as POA.

¶40    We conclude the circuit court did not err by issuing its temporary order without an evidentiary hearing. The parties submitted affidavits, which were considered by the court. Moreover, contrary to Lizabeth's assertions, the circuit court's limited finding that "[t]he lack of cooperation among the trustees impair[ed] the administration of the Trust" was undisputed and supported by the record. *See **Royster-Clark***, 290 Wis. 2d 264, ¶11. Lamm, Lizabeth, and the GAL

14

averred that Lizabeth was actively preventing Lamm from acting as co-trustee,[6] that BMO Harris effectively froze the trust because it began requiring Lamm's approval in addition to Lizabeth's, and that Lizabeth started using Kiernan's personal accounts to pay trust expenses.

¶41     Additionally, Lizabeth's arguments regarding the temporary POA overlook that, ultimately, the circuit court determined Detjen was POA because Lizabeth's subsequent POA designation was void on the basis of undue influence. We therefore conclude any error in the appointment of a temporary POA was harmless. *See Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶28, 246 Wis. 2d 1, 629 N.W.2d 768 ("If the error at issue is not sufficient to undermine the reviewing court's confidence in the outcome of the proceeding, the error is harmless.").

## V.     Dismissal of Lizabeth's cross claims against her sisters

¶42     Lizabeth then asserts the circuit court erred by dismissing her cross claims against her sisters at the conclusion of the first evidentiary hearing. She contends the scope of the first evidentiary hearing never included her cross claims and it was error for the court to dismiss them without notice or opportunity to be heard.

¶43     At the conclusion of the first evidentiary hearing, Detjen and Viola, among other things, moved to dismiss the "wild allegations" Lizabeth made against them in her cross claims on the basis that, given the record, none of them could be proven. Lizabeth did not oppose Detjen and Viola's motion or offer any argument as to why the cross claims should not be dismissed. The court

---

[6] Lizabeth's view was that Lamm resigned and was no longer co-trustee.

subsequently dismissed the cross claims, finding there was no basis for the claims. Given Lizabeth's failure to object to the motion to dismiss her cross claims, we conclude Lizabeth has forfeited any objection to the cross claims' dismissal. *See Huebner*, 235 Wis. 2d 486, ¶10.

## VI. Accuracy of the circuit court's written orders

¶44 Lizabeth contends the circuit court's written orders entered following the first and second evidentiary hearings should be vacated because they are "not entirely consistent with the oral ruling" from the transcripts. Lizabeth's argument on this issue is undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider undeveloped arguments). She does nothing more than provide a list of paragraph numbers from the orders that she believes are incorrect. We will not consider this argument further.

## VII. Circuit court's second-evidentiary-hearing determinations

¶45 Lizabeth next argues the circuit court erred in the various determinations it made at the second evidentiary hearing. She asserts the circuit court erred by ordering alterations to Kiernan's IRA account, by dismissing her cross claims against Lamm, by awarding various costs and fees and ordering Lizabeth to reimburse Kiernan and/or the trust for most of them, and by authorizing Kiernan's GAL to pursue collection efforts against Lizabeth if she did not timely make reimbursement. Lizabeth, however, forfeited her objections to and arguments regarding the court's determination on these issues when she failed to appear at the second evidentiary hearing. *See Huebner*, 235 Wis. 2d 486, ¶10.

## VIII. Denial of Lizabeth's motion for reconsideration

¶46 Following the second evidentiary hearing, Lizabeth moved for relief from the court's order pursuant to WIS. STAT. § 806.07(1)(h). Lizabeth argued, in part, she did not appear at the evidentiary hearing because she "was in the hospital, in crisis, due to the meritless Motion for Contempt filed by Plaintiffs,[7] with the penalty of sanctions and/or imprisonment." The circuit court denied Lizabeth's motion for relief, concluding:

> Defendant did not appear at the November 23, 2021 hearing. The Court had multiple times denied her request to appear remotely, the reasons for which are included in previous orders. Defendant's pattern of attempting to subvert the court's scheduled hearing process has continued throughout the proceedings. Multiple attorneys have withdrawn from representation. The Court further notes Exhibit 106 … Pages 18-20 particularly page 19 …, which references a similar pattern of behavior in the Arizona Courts.[8]
>
> Defendant asserts she was hospitalized on the date of the November 23, 2021 hearing. Defendant previously stated numerous times in correspondence and pleadings her intention to not appear. Defendant submitted correspondence prior to trial stating she would not attend and would appeal the Court's ruling. Defendant indicates she was hospitalized due to fear of the motion for contempt. This does not form a basis for relief.
>
> ….

---

[7] Detjen and Viola moved for contempt on the basis that Lizabeth had failed to provide an accounting as required by the court's order.

[8] Exhibit 106 was admitted into evidence at the November 23 evidentiary hearing in support of attorney fees incurred as a result of Lizabeth's behavior. The exhibit established that Lizabeth fired her attorney in Arizona four days before trial was set to begin. After Lizabeth made certain allegations about counsel, the Arizona court determined Lizabeth had waived attorney-client privilege and ordered Lizabeth's emails to counsel to be submitted. The emails established Lizabeth specifically timed her counsel's termination in order to obtain further delay.

17

> The Court's November 23, 2021 ruling is affirmed. The meritless continued submissions by Defendant will not obstruct the operation of law. The Court has made its rulings based upon the evidence properly submitted on November 23, 2021. Defendant's correspondence is not evidence.

> The Motion for Relief is denied.

¶47    On appeal, Lizabeth argues the circuit court erroneously exercised its discretion by failing to grant relief pursuant to WIS. STAT. § 806.07(1)(h) and order a new evidentiary hearing. "Whether to grant relief from judgment under WIS. STAT. § 806.07(1)(h) is a decision within the discretion of the circuit court." *Sukala v. Heritage Mut. Ins. Co.*, 2005 WI 83, ¶8, 282 Wis. 2d 46, 55, 698 N.W.2d 610, 614. "We will not reverse a discretionary determination by the trial court if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision." *Id.*

¶48    Here, the circuit court denied Lizabeth's motion for relief, concluding in part that Lizabeth had explicitly and repeatedly advised the court that she would not attend the November 23 evidentiary hearing. This determination is supported by the record and therefore not clearly erroneous. *See Sukala*, 292 Wis. 2d 46, ¶8. Although Lizabeth argues that her hospitalization prevented her from attending the November 23 hearing, Lizabeth has not made any showing that she would have participated in person had she not been hospitalized. We conclude the circuit court did not err by denying Lizabeth's motion for relief.

> *By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.